IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA, : NO. 3:16-CR-194
 :
   v. : (Judge Caputo)
 :
FUHAI LI, :
    Defendant :

---

## ORDER

 ***AND NOW,*** this _____ day of _____, 2016, upon consideration of Fuhai Li's Motion for Bill of Particulars and Discovery, **IT IS HEREBY ORDERED AND DECREED** that the motion is **GRANTED**.

BY THE COURT:

_____

**Honorable Judge Caputo, J.**

cc: Michael E. Weinstein, Esq.
  William Ruzzo, Esq.
  Michelle Olshefski,Esq. United States Attorney's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | NO. 3:16-CR-194 |
| | : | |
| v. | : | (Judge Caputo) |
| | : | |
| FUHAI LI, | : | |
| Defendant | : | |

---

## MOTION FOR BILL OF PARTICULARS AND FURTHER DISCOVERY AND POINTS OF AUTHORITY



MICHAEL E. WEINSTEIN, ESQUIRE
Attorney Pennsylvania I.D. #20806
410 Broad Street
Milford, PA 18337
Telephone:  (570) 296-7300
Facsimile:  (570) 296-8600

## Preliminary Statement

This Memorandum of Law and Defendant's Motion for Discovery is submitted in support of the Defendant's pretrial motions pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure. The Defendant seeks leave to supplement these motions to the extent that information gained from supplemental Discovery and Bill of Particulars raises new issues or sheds further light on the issues raised herein.

**POINT I**

**THE GOVERNMENT SHOULD BE ORDERED TO PROVIDE THE DEFENDANT WITH A BILL OF PARTICULARS.**

The Defendant moves for a Bill of Particulars amplifying the charges in the indictment so the Defendant might have adequate notice of the conduct with which he is charged in order to enable him to prepare and conduct his defense. The Defendant's demands include the following:

1. With respect to the Indictment, which refers to the Middle District of Pennsylvania "and elsewhere" and to the defendants "and other persons," state the places indicated by elsewhere and the names of the persons indicated by other persons.

2. With respect to the Indictment, identify the date and time when and the place where the alleged offenses occurred.

3. With respect to the Indictment, identify the date and time when and the place where the Defendant, Fuhai Li, committed the offenses.

4. With respect to the Indictment, identify the person or persons to whom the Defendant, Fuhai Li provided

controlled substances contrary to the best medical practices.

5. With respect to the Indictment, specify the quantity of controlled substances that the Defendant, Fuhai Li, provided contrary to the best medical practices.

6. With respect to the Indictment, specify the amount of monies paid to or received by the Defendant, Fuhai Li, for medical services contrary to the best medical practices.

The Defendant moves for an order directing the Government to provide a bill of particulars, pursuant to Fed.R.Crim.P. 7 and the Fifth and Sixth Amendments to the United States Constitution. See: **United States v. Davidoff, 845 F.2d 1151** (2d Cir. 1988); **United States v. Bortnovsky, 820 F. 2d 572** (2d Cir. 1987).

POINT II

**THE GOVERNMENT SHOULD BE COMPELLED TO PROVIDE THE DEFENDANT IMMEDIATELY WITH CERTAIN DISCOVERY, INCLUDING BRADY MATERIAL IMPEACHMENT EVIDENCE; AND OTHER DISCOVERY TO WHICH THE DEFENDANT IS ENTITLED.**

Since the Indictment, little Discovery has been provided to Defendant, and the bulk of Discovery is still outstanding and the Defendant moves for production under Rule 16 and the Constitution and Laws of the United States.

Defendant moves for the following Discovery and Inspection:

1. Any and all written or recorded statement by Defendant, or copies thereof, including, statements made by Defendant to any Government Agents, including but not limited to, U.S. DEA Investigators and Assistant United States Attorneys. Fed. R. Crim. 16(a) (1) (A).

2. The substance of any and all oral statements which were made by Defendant whether before or after the Indictment, that the Government intends to offer in evidence at trial, whether in its case in chief, cross-examination, or rebuttal, in response to interrogation by any person then known to be a Government Agent. Fed. R. Crim. P. 16 (a) (1) (A).

3. Any statement, confession, or admission, relating directly or indirectly to the charges in this case, made by Defendant to Investigation Officers, or to third parties. This request includes any statement or admission which may have been incorporated into any report, memorandum, transcript, or other document or recording prepared by federal, state, or local government agents or

attorneys, or by any other person working in conjunction with such agent or attorneys. This request also encompasses statements made by Defendant to third parties who then made a statement to the Government in which the Defendant's remarks were repeated or reported and included in the third party's statement. **See: <u>United States v. Thevis</u>**, 84 F.R.D. 47, 55 (N.D. Ga. 1979). This request also encompasses any statements made by any agents of the Defendant to Government Officers or Attorneys that the Government considers to be statements made by Defendant.

4. The identity of all Government Agents or other persons present at the time any oral statements referred to in the previous requests were made, including persons who were subject to a cooperation agreement with the Government at the time such statements were made.

5. Any and all documents which were obtained from Defendant. Fed. R. Crim. P. 16 (a) (1) (C). This request includes any documents that were obtained from or were the property of any employee, agent, or professional consultant (e.g., attorney, tax preparer, accountant, auditor) of Defendant or from any third party having custody of property belonging to Defendant, including, but not limited to, banks or other institutions, in which Defendant has invested, or at which Defendant maintains an account. The

Government has not provided the basis for the search of Defendant's home and Defendant moves for production of same.

6.    Any and all documents which the Government intends to use at trial as evidence in its case in chief. Fed. R. Crim. P. 16(a) (1) (C). This includes not only those items which will be marked and offered into evidence, but also those documents which will be relied upon or referred to in any way by any witness called by the Government during its case-in-chief. **United States v. Turkish**, 458 F. Supp. 874, 882 (S.D.N.Y. 1978). Any documents in this category should be specifically identified from among the mass of documents that should be produced pursuant to Defendant's Rule 16 requests, both to enable counsel to prepare effectively for trial and to afford the Defendant an opportunity to move to suppress any evidence the government intends to use in its case in chief. **See:** Fed. R. Crim. P. 12 (b) (3) and 12 (d) (2).

7.    Any and all documents which are material to the preparation of the defense. Fed. R. Crim. P. 16 (a) (1) (C). This request includes, but is not limited to:

   a. Transcripts of and "real time" copies of any and all audio tape and video tape recordings relevant to the defense of this case, whether made by the Government

of private individuals. This includes, but is not limited to:

    (i) Any tape recorded conversation on which the Defendant was recorded;

    (ii) Any tape recorded conversation on which there is any reference to the Defendant;

    b. Any and all physical evidence recovered during the course of the Government's investigation.

    c. All documents reflecting or relating to the chain of custody of physical evidence.

8. Any and all documents reflecting or relating to results or reports of physical or mental examinations, scientific tests or experiments, or copies thereof, which were conducted in connection with any investigation of the charges contained in the Indictment, Fed. R. Crim. P. 16 (a) (1) (D), including but not limited to:

    a. Any and all writing exemplars and handwriting samples of Defendant and/or Defendant's family members, opinions of handwriting experts, handwriting analyses, and all documents used in such analyses;

    b. Any and all fingerprints and palmprint exemplars, fingerprint samples, comparisons, and opinions of fingerprint experts and all documents that relate to those opinions;

c. Any and all voice exemplars taken in connection with investigations concerning any of the tape-recorded conversations requested in paragraph 8 above;

d. Any and all psychological tests performed upon any government witness, and all documents that refer or relate to such tests;

e. Any and all polygraph examinations, psychological stress evaluations, hypnotic procedures, or any other scientific procedures devised to determine whether a subject is telling the truth, or to refresh a witness' memory, and all documents that refer or relate to such examinations;

f. Any and all enhancements of audio or video tape recordings, and copies of any such enhanced recordings;

g. Any and all scientific comparisons and tests including, but not limited to, DNA and voice analyses, age determinations, and voice print analyses;

h. Any and all medical records of any deceased person whose death was allegedly caused by Defendant. These records should include autopsy reports and all medical records of said deceased persons. These records may be relevant and exculpatory to show alternate cause

of death or lack of causation on the part of the Defendant.

9. Pursuant to **Brady v. Maryland**, and its progeny, including **United States v. Agurs**, 427 U.S. 96 (1976), **Giglio v. United States**, 405 U.S. 105 (1972), and **United States v. Bagley**, 469 U.S. 1016 (1985), any and all exculpatory or impeaching material or information in the Government's possession, custody, or control, otherwise known to the Government or by the exercise of due diligence may become known, any and all documents reflecting or relating to such material or information, including without limitation:

   a. Any and all documents, records, or information including cooperation agreements and plea agreements revealing arrests, prior criminal convictions, guilty verdicts, or juvenile adjudications, of any person whom the Government may call as a witness at trial;

   b. Any and all documents, records, and information revealing the character, reputation for untruthfulness or dishonesty, prior or subsequent misconduct, criminal acts or bad acts of each such person;

   c. Any and all consideration or promises of consideration given during the course of the investigation and

preparation of this matter by any Law Enforcement Officials, including Government Agents, Police, or Informers, to each such person. Such "consideration" refers to anything which arguably could be of value or use to such person, including but not limited to formal or informal, direct or indirect, leniency; favorable treatment or recommendations or other assistance with respect to any pending or potential criminal, parole, probation, pardon, clemency, civil, administrative, or other matter involving the state or federal government, any other authority, or other parties; civil, criminal, or tax immunity grants; relief from forfeiture, payments of money, rewards of fees, witness fees, and special witness fees; provisions of food, clothing, transportation, legal services or other benefits; placement in a "witness protection" program; letters to anyone informing the recipient of the witness' cooperation; recommendations concerning licensing, certification or registration; promises to take affirmative action to help the status of such person in a profession, business, or employment promises not to jeopardize such status; aid or efforts in securing or maintaining the business or employment of such person; and

anything else which arguably could reveal an interest, motive or bias of such person in favor of the prosecution or against the Defendant or which could act as an inducement to testify or to color his testimony;

d. Any and all statements – formal or informal, oral or written – by the government to any such person (including counsel for such persons) pertaining in any way to the possible or likely course or outcome of any government action – state or federal, civil or criminal – or immigration matters against such person, or any related by blood or marriage to such person;

e. Any and all threats, express or implied, direct or indirect, or other coercion directed against any such person (including counsel for such person) related to criminal prosecutions pending or which could be brought against any such person; any probationary, parole, deferred prosecution or custodial status of any such person; and any civil, tax court, court of claims, administrative, or other pending or potential legal disputes or transactions involving any such person and the state or federal government or over which the state or federal government has real, apparent, or perceived influence.

f. A list of any and all requests, demands, or complaints made to the Government by any such person (including counsel for such person) which arguably could be developed on cross-examination to demonstrate any hope or expectation on the part of such person for favorable governmental action in his behalf (regardless of whether or not the Government has agreed to provide any favorable action);

g. Any and all material not otherwise listed which reflects or evidences either the motivation of any such person to cooperate with the Government or any bias or hostility against the Defendant;

h. Any and all dates on which any such person has testified or made statements before any court, grand jury, or any tribunal body, or otherwise officially narrated in relation to the Defendant, the investigation, or the facts of this case and the documents such as transcripts, memoranda, and notes of the person's testimony or statement;

i. Any and all statements or documents, including but not limited to, aliases, grand jury testimony, and federal, state, and local tax returns made or executed by any such person, which the prosecution knows, or

through reasonable diligence, should have reason to know is false;

j. Any and all medical and psychiatric reports known to the Government or which can reasonably be known to the Government concerning any such person which may arguably affect that person's credibility or ability to perceive, relate, or recall events;

k. Any and all written or oral statements, whether or not reduced to writing, made by any such person which in any way contradicts or is inconsistent with or different from other oral statements he has made[1], and any such statements made by any person, whether a witness or not, which in any way contradicts, or is inconsistent with or different from any statement made by a potential prosecuting witness;

l. Any and all requests prepared by the prosecution for permission to grant immunity or leniency for any such person, whether or not such request was granted;

m. Any and all documents, records and/or information concerning any such persons which arguably could be helpful or useful to the defense in impeaching or

---

[1] This request includes any interviews or grand jury testimony of such person where he or she did not inculpate defendant in the criminal activity charged in the indictment or implicated him in a manner inconsistent with how he or she presently implicates defendant.

otherwise detracting from the probative force of the Government's evidence;

n. Any and all exculpatory testimony given before the grand jury by any person;

o. The same documents, records, and information described in the preceding requests in this section with respect to each non-witness declarant whose statements may be offered in evidence at trial. **See** Fed. R. Evid. 806;

p. The names and addresses of all persons whom the prosecution, its agents or representatives, believe has relevant knowledge and/or information with reference to the charges contained in the Indictment but whom the prosecution does not propose to call as witness at trial;

q. Any and all documents and records of Law Enforcement Agencies reflecting intradepartmental disciplinary action taken against any Law Enforcement Official who will testify at trial;

r. Any and all unsuccessful attempts by Government Agents or informants to discover evidence of criminal activity by defendant;

s. Evidence of all unsuccessful attempts by undercover Government agents or by informants to discover

evidence of criminal activity by the Defendant. See: **United States v. Barrett**, 153 F. Supp. 3d 552 (E.D.N.Y. 2015) Outlining procedures for Discovery and approving disclosure beginning four weeks prior to trial in **United States v. Gotti**, 2004 WL 602689 at 15 (S.D.N.Y. March 26, 2004).

10. Pursuant to the Fifth and Sixth Amendments to the United States Constitution, Fed. R. Crim. P. 16 (a) (1) (C), and Fed. R. Evid, 403 and 404 (b), we request that the Government disclose all evidence of other or similar crimes, wrongs, or acts, allegedly committed by Defendant, upon which the Government intends to rely to prove motive, scheme, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, "background of conspiracy" or for any other purpose.

11. The name, current address, and telephone number of each witness the Government intends to call at trial who will be offering "expert" testimony, including any Law Enforcement Personnel who will offer such testimony. For each witness, the Defendant requests:

a. a detailed biography or resume;

b. copies of all documents, records or other materials used in reaching his or her opinion;

c. copies of all computation sheets, work papers, reports, charts, ledgers, rough notes, or other documents prepared by the witness in connection with his or her analysis;

d. the title, case number and court of any case in which the witness has previously testified.

12. All statements required to be produced under 18 U.S.C. 3500, including but not limited to handwritten and other informal notes or interviews. If any such statements or notes have been or are intended to be discarded or destroyed, please identify such statements and notes in sufficient detail to permit a request to the Court for appropriate relief in advance or trial.

13. Any and all evidence that indicates that any person who is a government witness or prospective government witness in this case is or was suffering from any physical or mental disability or emotional disturbance, drug addiction or alcohol addiction at any time during the period of the indictment to the present.

14. The Defendant requests that the Government disclose the impanelment and adjournment dates of each Grand Jury that heard evidence concerning this case, the instructions provided to the Grand Jury before the Indictment was returned,

and the voting record and transcript of the return in open court or the Indictment.

15. The Defendant requests that the Government furnish a copy of every press release issued by the U.S. Attorney's Office, the Department of Justice, the Drug Enforcement Agency, or any other agency, department or division of the Government, which concerns or relates to this case. The Defendant also requests a transcript of (or an opportunity to view any videotapes or to hear any tape recordings of) any press conference by any member of the entities listed above which concerns or relates to the indictment.

## Pre-trial Disclosure of Brady Material

The Defendant hereby moves for the production of Brady material, including impeachment material, in his initial demand for Discovery. This includes, but is not limited to, such information as any criminal records and bad acts of government witnesses; any consideration or promises given to such witnesses; identification of other proceedings in which such witnesses testified; any statements or documents of such a witness which the Government knows or has reason to know is false or misleading; any medical or psychiatric reports which may affect the witness' credibility or ability to perceive or relate or recall events; any statements of a witness

inconsistent with his or her own or other witnesses'
statements; the same information with respect to each non-
witness declarant whose statements will be offered in
evidence; the names of persons whom the Government believes
have knowledge of the charges in the indictment by whom the
prosecution does not propose to call as witnesses at trial;
records of Law Enforcement Agencies reflecting disciplinary
action taken against any Law Enforcement Official who was
involved in the investigation; and evidence tending to show
the use, possession or sale of controlled substances by any
potential government witness.

Evidence which may serve to impeach the testimony or
credibility of a prosecution witness is an extremely
important category of **Brady** material in this case in light of
the nature of the witnesses the Government will presumably
call.[2] The Second Circuit stressed in **Grant v. Alldredge**, 498
F.2d 376 (2d Cir. 1974), that **Brady** material should be turned
over to the defense in advance of trial "to allow for full

---

[2] There can be no serious dispute over the proposition that Brady
encompasses material that "might well alter the jury's judgement of the
credibility of a significant prosecution witness." Perkins v. LeFevre, 961 F.
2d 616, 619 (2dCir. 1982), citing Giglio v. United States, 405 U.S. 150, 154
(1972); United States v. Chitty, 760 F. 2d 425, 428 (2d Cir. 1985) (The Brady
rule applies equally to impeachment and exculpatory evidence"). A the Supreme
Court stated in United States v. Bagley, 473 U.S. 667 (1985), "(i)mpeachment
evidence..as well as exculpatory evidence is 'evidence favorable ot an accused',
so that, if disclosed and used effectively, it may make the difference between
conviction and acquittal..This Court has rejected any such distinction between
impeachment evidence and exculpatory evidence." Id. at 676.

exploration and exploitation by the defense." The court cited **United States v. Gleason**, 265 F. Supp. 880, 885 (S.D.N.Y. 1967), and concluded that the **Brady** material "should have been revealed well before the commencement of trial." 498 F. 2d at 382.

In **United States v. Green**, 144 F.R.D. 631 (W.D.N.Y 1992), where the Government offered to disclose **Brady** documents one week before trial, the Court concluded that this proposal failed to satisfy the Government's obligations under **Brady** and did not ensure that the Defendant would be able to effectively utilize the material divulged. The Court relied on **United States v. Pollack**, 534 F. 2d 964 (D.C. Cir. 1976), for the rationale that it ultimately applied in resolving the **Brady** issue. In **Pollack**, Judge Lumbard, sitting by designation, explained:

> Disclosure by the government must be made at such time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criteria requires pre-trial disclosure.

534 F. 2d at 973-74 (citations omitted). Such early disclosure follows from the principle that "[o]rdinarily it is disclosure rather than suppression, that promotes the proper administration of criminal justice." **United States v. Baum**, 482 F.2d 1325, 1331 (2d Cir. 1973). The Third

Circuit has a longstanding policy of encouraging early disclosure of **Brady** material. **United States v. Starusko**, 729 F.2d 256, 261 (3d Cir. 1984), and a District Court has general discretionary authority to order disclosure of **Brady** material. **United States v. Higgs**, 713 F.2d 39, 44 (3d Cir. 1983).

In **United States v. Mitchell**, 372 F. Supp. 1239 (S.D.N.Y. 1973), the Court rejected the blanket assertion "that **Brady** imposes no pretrial obligation on .. the Government," holding instead that:

> [T]he due process implications of **Brady** (obligate) the government to disclose exculpatory information <u>as soon as the character of such information is recognized</u>. This obligation has no chronological boundaries, but applies equally to the pretrial trial, and post-trial stages of a proceeding.

372 F.Supp. at 1251 (emphasis in original). Similarly, in **United States v. Deutsch**, 374 F. Supp. 289 (S.D.N.Y. 1974), the Court ordered the prosecutor to permit Discovery and Inspection of all exculpatory material as "promptly as reasonable possible." The Court stressed:

> It should be obvious to anyone involved with criminal trials that exculpatory information may come

too late, if it is given only at
trial, and that the effective
implementation of **Brady v. Maryland**
must, therefore, require early
production in at least some
situations.

**Id**. At 291.

More recently, in United States v. Crozzoli, 698 F.Supp.

430 (E.D.N.Y. 1988), which dealt with impeachment material

(agreements between the government and witnesses), the Court

held that Brady requires timely pretrial disclosure of all

exculpatory information, stating:

Surely, such a dilution of Brady
[i.e., a reading of Brady as not
imposing pretrial disclosure
obligations] is not warranted by a
literal reading of that decision.
To permit the prosecution to
withhold exculpatory evidence
despite a request until such time as
the prosecutor chooses to disclose
it, is to permit the prosecutor to
control, to some extent, the
preparation of a defense.

**Id**. at 436-37.

Nor can the Government evade timely disclosure of **Brady**

material by lumping it together with production of § 3500

material under the Jenks Act.[3] This was made clear in **United**

**States v. Gallo**, 654 F.Supp. 463 (E.D.N.Y. 1987), where the

Court pointed out that "'[t]here inheres in an overrigid

_____

[3] Needless to say, favorable statements in the Government's possession made by persons who will not be called as witnesses will never be § 3500 material, yet these statements must be disclosed under **Brady**.

interpretation and application of the statute [18 U.S.C.§ 3500] the hazard of encouraging a practice of government agents' taking statements in a fashion calculated to insulate them from production.'" **Id**. at 474, **quoting**, United States v. Palermo, 360 U.S. 343, 365-66 (1959) (concurrence). The Gallo court added:

> Such an overrigid reading of section 3500(a)would lead to the conclusion that pretrial discovery is never permissible for any material contained in the statements of prospective witnesses even if there are alternative bases for such discovery. But that interpretation has never been accepted. For instance, compliance with the Jencks Act discovery schedule does not necessarily satisfy the due process requirements for **Brady** material. If witness' statements contain material exculpatory to the defendant, due process requires pretrial production under **Brady** despite the fact that it may be Jencks material as well.

654 F.Supp. at 474 (citations omitted)

Accordingly, this Court should direct that all **Brady** material sought in the Defendant's instant Motion for Discovery, including all impeachment material in the possession, custody or control of the Government – or any other Law Enforcement entity which has been involved in the investigation of this case – be disclosed, at this time, to counsel for the Defendant.

## Other Discovery

In 1991 Rule 404(b) of the Federal Rules of Evidence was amended "to reduce surprise and promote early resolution of admissibility" by adding a pretrial notice requirement to the rule. Advisory Committee Notes to Rule 404(b). Accordingly, the Defendant moves for the production of "all evidence of other or similar crimes, wrongs, or acts, allegedly committed by defendant, upon which the Government intends to rely to prove, **inter alia**, motive, scheme, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or 'background of the conspiracy.'" Defendant points out that his request, and Rule 404(b), extend not only to other "crimes," but also to other "wrongs or acts."

The Defendant similarly should be given immediate notice of any statements to be offered by the Government under Rules 803(24) and 804(b)(5) of the Federal Rules of Evidence, including the Particulars of the statement and the name and address of the Declarant.

Finally, in order that the Defendant may prepare for trial and pursuant to Rule 104 of the Federal Rules of Evidence, the Government should be directed to furnish him with any statement it intends to offer in its case in chief under Rule 801(d)(2) of the Federal Rules of Evidence.

## POINT III

**INFORMATION RELATED TO THE GRAND JURY PROCEEDINGS SHOULD BE ORDERED DISCLOSED TO PERMIT THE DEFENDANT TO MOVE TO DISMISS THE INDICTMENT "BASED ON DEFECTS IN THE INSTITUTION OF THE PROSECUTION."**


The Fifth Amendment provides that no person shall be held to answer for an infamous crime unless upon indictment of a Grand Jury. In **United States v. Williams**, 112 S.Ct. 1735 (1992), the Supreme Court reaffirmed the functional independence of the Grand Jury: "Recognizing this tradition of independence, we have said that the Fifth Amendment's 'constitutional guarantee presupposes an investigative body acting independently of either prosecuting attorney or judge.'" Id. at 1743 (citations omitted); see also **United States v. Calandra**, 414 U.S. 338, 343 (1974) (Grand Jury serves as a "protector of citizens against arbitrary and oppressive governmental action"); **United States v. Fischer**, 455 F.2d 1101, 1105 (2d. Cir. 1972)(the Grand Jury is not meant to be the private tool of the prosecutor').

In **Bank of Nova Scotia v. United States**, 4887 U.S. 250, 256, 257 (1988), the Supreme Court made clear that dismissal of an Indictment is appropriate for certain irregularities occurring before the Grand Jury, i.e., where "the violation substantially influenced the Grand Jury's decision to indict" or where "the structural protections of the Grand Jury have been so compromised

as to render the proceedings fundamentally unfair." **Id**. at 256, 257; see also **United States v. Brito**, 907 F.2d 392, 395 (2d Cir. 1990) (expressing concern that "the United States Attorney's Office may again be leaning to a casual, 'anything goes' attitude with respect to Grand Jury proceedings"); **United States v. Hogan**, 712 F.2d 757 (2d Cir. 1983) (ordering Indictment dismissed due to prosecutor's presentation of inflammatory hearsay to Grand Jury). Thus, this Court is empowered to inquire whether the Grand Jury's function is this case was undermined by irregularities occurring before that body.

The Defendant hereby moves for production of certain information which would reveal the existence of structural or prejudicial irregularities involving the Grand Jury, for example, the impanelment and adjournment dates of each Grand Jury that heard evidence concerning this case, the instructions provided to the Grand Jury before the Indictment was returned, and the voting record and transcript of the return in open court of the Indictment. Other situations that may corrupt the Grand Jury process include whether any persons were present during Grand Jury proceedings other than Grand Jurors, the witness under examination, court reporter, and an assistant United States Attorney (see Fed. R. Crim. P. 6(d); and whether any Grand Jury materials, including Grand Jury transcripts or any documents or information produced to the Grand Jury, were disclosed or released

to any person other than the Grand Jurors, witnesses, court reporters, and assistant United stated Attorneys (**see** Fed. R. Crim. P. 6(e)).

Disclosure of this information is essential so that the Defendant, as required by Fed. R. Crim. P. 12(b)(1), may move to dismiss the Indictment "based of defects in the institution of the prosecution."  Since the requested information does not involve evidence presented to the Grand Jury, any concerns that Grand Jury secrecy would be violated by such disclosure are misplaced here. Thus, the information should be ordered disclosed to the Defendant. Alternately, the Defendant requests that the Court inspect the Grand Jury minutes and records relating to each Grand Juror's qualifications and the Grand Jury's impanelment, attendance and voting record to ensure that the structural protections of that body were honored, **see**: e.g., Fed. R. Crim. P.6(a)(1),(b),(d),(f).


## POINT IV

**THE GOVERNMENT SHOULD BE REQUIRED TO PRESERVE, AND TO PROVIDE DEFENDANT WITH, HANDWRITTEN NOTES MADE BY WITNESSES OR MADE IN INTERVIEWS OF WITNESSES OR OTHER PERSONS WITH KNOWLEDGE OR RELEVANT FACTS, WHETHER OR NOT THOSE WITNESSES OR PERSONS WILL BE CALLED AT TRIAL.**

Notes made by witnesses or made by agents interviewing witnesses or other persons with relevant knowledge nay be § 3500 material — only if, of course, such person is called by the prosecution at trial — but also may be **Brady** material — if they contain statements inconsistent with statements in Grand Jury testimony, trial testimony or formalized reports, or if they contain more information or less information than in Grand Jury testimony, trial testimony, or formalized reports. Thus, while under § 3500(e)(1) only "substantially verbatim" notes of a witness' oral statements may fall within the Jencks Act, and while some courts have held that "substantially verbatim" notes need not be preserved if incorporated into typed reports, see **United States v. Elussma**, 849 F.2d 76, 79 (2d Cir. 1986), notes that are <u>not</u> substantially verbatim and are <u>not</u> incorporated into typed reports may very well be **Brady** material. Indeed, the destruction of such notes by the Government might suggest that they contain information useful or favorable to the Defendant. Requiring the Government to <u>preserve</u> such notes therefore serves the interests of justice and cannot possibly prejudice the Government unfairly. See **United States v. Buffalino**, 576 F.2d 446, 450 (2d Cir. 1978)("any resulting costs in the form of added shelf space will be more than counterbalanced by gains in the fairness of trials"); see also **United States v. Harris**, 543 F.2d 1247 (9th Cir. 1976); **United States v. Harrison**, 524 F.2d 421, 28-29 (D.C. Cir. 1975).

For the reasons set forth above in the Defendant's discussion of the interplay between the different principles and rules governing **Brady** and Jencks Act material, the Government should be required to furnish the Defendant with such notes now, or alternately, to provide them to the Court for a determination whether they contain statements useful or favorable to the accused, including inconsistencies and omissions when compared to statements in Grand Jury testimony, trial testimony, or formalized reports.

## POINT V

**THE DEFENDANT REQUESTS LEAVE TO MAKE ADDITIONAL MOTIONS FOLLOWING DISCOVERY OF THE INFORMATION SOUGHT IN THESE MOTIONS.**

## CONCLUSION

The pretrial relief sought herein by the Defendant should be granted.


Respectfully Submitted,

_____
MICHAEL E. WEINSTEIN, ESQUIRE
Attorney Pennsylvania I.D. #20806
410 Broad Street
Milford, PA 18337
Telephone:  (570) 296-7300
Facsimile:  (570) 296-8600

Dated: December _____, 2016

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | NO. 3:16-CR-194 |
| | : | |
| v. | : | (Judge Caputo) |
| | : | |
| FUHAI LI, | : | |
| Defendant | : | |

---

**CERTIFICATE OF CONCURRENCE**

Undersigned counsel hereby certifies that he has consulted with Michelle Olshefski, Assistant U.S. Attorney, who has concurred that the foregoing request for Bill of Particulars and Further Discovery has yet to be resolved.


Respectfully submitted:

MICHAEL E. WEINSTEIN, ESQUIRE

/s/Michael E. Weinstein

_____
MICHAEL E. WEINSTEIN, ESQUIRE
Attorney Pennsylvania I.D. #20806
410 Broad Street
Milford, PA 18337
Telephone: (570) 296-7300
Facsimile: (570) 296-8600


Dated: December  21 , 2016

UNITED STATES OF AMERICA,  :     NO. 3:16-CR-194
                                   :
           v.  :     (Judge Caputo)
                                   :
FUHAI LI,  : 
                 Defendant  : 

---

### CERTIFICATE OF SERVICE

      I, MICHAEL E. WEINSTEIN, ESQUIRE, hereby certify that on this ___21___ day of December, 2016, I served Defendant's Motion for Bill of Particulars and Discovery via ECF:

                Michelle Olshefski, Esquire
                Assistant U.S. Attorney


                MICHAEL E. WEINSTEIN, ESQUIRE

                /s/Michael E. Weinstein
                _____
                MICHAEL E. WEINSTEIN, ESQUIRE
                Attorney Pennsylvania I.D. #20806
                410 Broad Street
                Milford, PA 18337
                Telephone:  (570) 296-7300
                Facsimile:  (570) 296-8600