UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 3:16-CR-194 |
| | : | |
| v. | : | (JUDGE CAPUTO) |
| | : | |
| FUHAI LI, | : | (ELECTRONICALLY FILED) |
| Defendant | : | |

## GOVERNMENT'S MOTION IN LIMINE TO ADMIT PRESCRIPTION DATA

## I.    INTRODUCTION

On October 17, 2017, a federal grand jury returned a 32-count Superseding Indictment charging the defendant, Fuhai Li (the defendant), with various violations of federal law.   Counts 1 through 23 charge violations of 21 U.S.C. § 841(a)(1), for the defendant's distribution and dispensing of controlled substances outside the usual course of professional practice and not for a legitimate medical purpose.   Count 24 charges a violation of 21 U.S.C. § 841(a)(1), for the defendant's distribution and dispensing of a controlled substance resulting in serious bodily injury and death of a person.   Count 25 charges a violation of 21 U.S.C. § 861(f), for the defendant's distribution and dispensing of a controlled substance to a pregnant individual. Counts 26 and 27 charge violations of 21 U.S.C. § 856(a)(1), for the defendant's maintaining locations at 104 Bennett Avenue, Suite 1B, Milford, Pennsylvania, and 200 3rd Street, Milford Pennsylvania, for the purpose of unlawfully distributing controlled substances.   Counts 28 and 29 charge violations of 18 U.S.C. § 1957, for

1

the defendant's engaging in monetary transactions in property derived from a specified unlawful activity. Counts 30 through 32 charge violations of 26 U.S.C. § 7201, for the defendant's tax evasion. The 27-page Superseding Indictment, which includes a detailed recitation of facts supporting the charges, also includes a forfeiture allegation seeking forfeiture of various property and U.S. Currency. (*See MDPA 3-cr-16-194, Doc. 47*).[1]

The Government now moves to admit data of the defendant's prescribing history from the Pennsylvania, New Jersey, and New York's Prescription Drug Monitoring Programs (PDMPs).

a. <u>Elements of the Drug Counts</u>

Because the defendant was a physician during the relevant time period, for the defendant to be guilty of the drug distribution counts, the Government must prove: (1) that the defendant knowingly and intentionally distributed prescriptions for controlled substances including oxycodone, oxymorphone, hydromorphone, methadone, and fentanyl (as charged in various counts), knowing that each was a controlled drug; (2) that the defendant distributed such drugs outside the usual course of professional practice and without legitimate medical purpose; and (3) that the defendant acted with the intent to distribute those drugs outside the usual course

---

[1] The defendant was first charged in a 24-count Indictment returned by a federal grand jury on July 20, 2016. (*See MDPA 3-cr-16-194, Doc. 1*).

of professional practice and without legitimate medical purposes.  The act of prescribing a controlled substance constitutes distribution.  *See* 21 U.S.C. §§ 802(8) (11).

## II.     BACKGROUND

For the time charged in the Superseding Indictment, the defendant was representing himself as a pain management specialist.  The defendant came to the attention of law enforcement in two ways.  In or around the Spring of 2013, one of the defendant's employees was concerned about things she was witnessing within the defendant's medical practice and alerted law enforcement.  Around the same time, the Drug Enforcement Administration (DEA) in Scranton received an anonymous letter from a rehabilitation facility located in Pike County.  The letter expressed concerns about client's seeking help for addiction with so many of them talking about the defendant and his reputation for being a "pill doctor."

An investigation was initiated and a number of alarming circumstances were uncovered.  For example, the defendant's most common "fix" to any purported problem was to prescribe an opioid drug, those drugs with an extremely high abuse and addiction potential and, not coincidentally, many patients became addicted.  The defendant eschewed other available – and frequently less addictive – pain relief pills, pain relief options targeted to specific types of pain, and further did not appropriately and medically titrate to effect, that is, start with an appropriately small dose and frequent monitoring to assess effectiveness, only increasing dosages in smaller

increments.  Moreover, the investigation into the defendant's prescribing habits

revealed that he was, indeed, one of the highest prescribers of oxycodone and other

controlled substances in the Commonwealth of Pennsylvania.[2]

---

[2]  It is, of course, a federal offense, when a street dealer distributes Schedule II narcotics.  It is no less a federal offense when a doctor does so using a prescription pad where, as here, such prescriptions are "outside the usual course of professional practice and not for a legitimate medical purpose," the legal and medical standard necessary to justify prescriptions of such large quantities of dangerous and addictive drugs.  In *United States v. Moore*, 423 U.S. 122 (1975), the Supreme Court specifically found that the provisions of 21 U.S.C. § 841(a)(1) apply to doctors.  The D.C. Circuit Court's original opinion is instructive.  The dissent opinion authored by Circuit Judge MacKinnon (and which was ultimately validated by the Supreme Court which later agreed with the dissent and overruled the D.C. Circuit) noted with approval an expert's testimony about the prescribing of Dr. Moore's:  "Moore's fee arrangement of increasing prices for a prescription based solely on the number dolophines [methodone] prescribed was characterized by one medical expert as follows:  'that is not only not acceptable medical practice; that is unethical medical practice.'"  Jude MacKinnon concluded, "[t]hus the evidence credited at trial by the jury conclusively establishes that Dr. Moore operated far beyond the pale of accepted medical practice. He clearly did not dispense methadone for detoxification purposes, but rather, quite simply, preyed upon the insatiable cravings of those unfortunate victims he purported to treat solely to get their money.  In short, Moore was a drug pusher, a trafficker in illegal narcotics."  *United States v. Moore*, 505 F.2d 426, 447-48 (D.C. Cir. 1974), further making the point that the use of "vanilla" words versus accurate and appropriately descriptive words in appropriate.  *See also United States v. Feingold*, 454 F.3d 1001, 1007 (9th Cir. 2006) (testimony from medical experts about the applicable standard of professional care in prescribing narcotics is relevant in a prosecution against a physician for illegal distribution of controlled substances: "Knowing how doctors generally ought to act is essential for a jury to determine whether a practitioner has acted not as a doctor, or even as a bad doctor, but as a 'pusher' whose conduct is without a legitimate medical justification."); *and see* Government expert Dr. Thomas' opinions cited with approval by Judge Schiller in his Memorandum denying post-verdict motions in *United States v. Werther*, Criminal No. 11-434, p. 14-16.

III.    PRESCIPTION DRUG MONITORING PROGRAM DATA

A vast majority of the prescriptions for controlled substances written by the defendant during the relevant time period were filled by pharmacies within the Commonwealth of Pennsylvania.  Data from all of these prescriptions is collected by the Pennsylvania Prescription Drug Monitoring Program (PDMP).  A smaller percentage of the defendant's prescriptions were filled in New Jersey and New York. Data from these prescriptions was similarly collected by agencies in New Jersey and New York, and recorded in these states' prescription monitoring databases.

As part of the evidence that will be used to prove the controlled substance charges against the defendant, the Government intends to utilize prescription drug data required to be kept by state law in prescription drug monitoring databases for Pennsylvania, New Jersey, and New York.

a)  PDMP Databases and the Data Contained Therein.

All states, including the District of Columbia, currently utilize some form of electronic prescription drug monitoring database in which data from all prescriptions for controlled substances filled by pharmacies within the state are recorded.  Data from these state databases is routinely admitted as evidence in federal court where

an individual is charged with prescribing or dispensing controlled substances outside

the usual course of professional practice.[3]

Pursuant to statutes in Pennsylvania, New Jersey, and New York, individuals

authorized to directly dispense controlled substances are mandated by law to report

certain information about each prescription to their respective PDMP database.

Pennsylvania P.L. 2911, Act 191; N.J.S.A. 45:1-45, *et. seq.*; N.Y.P.L. 2911, No. 191.

While the reporting requirements are slightly different in each state, the PDMP

databases for Pennsylvania, New Jersey, and New York all contain information

identifying, among other things: (1) the drug type and quantity of the dispensed

controlled substances; (2) the date the prescription was written and the date it was

dispensed; (3) information about the prescriber; and (4) information about the

prescription recipient.  Failure to comply with theses mandatory reporting

---

[3]    A quick search for other cases across the nation in which PDMP data was admitted, typically without objection, yielded the following non-exhaustive list: *United States v. Mirilishvili*, 2016 U.S. Dist. LEXIS 21268, *14–17 (SDNY 2016) (admitting New York PDMP records) ; *United States v. Lowe*, 14-cr-0055-LGS (SDNY) (admitting New York PDMP records); *United States v. Wiseberg*, 13-cr-00794-AT (SDNY) (admitting New Jersey PDMP records); *United States v. Boccone*, 11-cr-00592 (EDVA) (admitting Virginia PDMP records); *United States v. Kabov*, 15-cr-00511-DMG (CDCA) (admitting California PDMP records); *United States v. Garg*, 15-cr-0007-JAK (CDCA) (admitting California PDMP records); *United States v. Sun*, 14-cr-00157 (CDCA) (admitting California PDMP records); *United States v. Bamdad*, 08-cr-00506-GW (CDCA) (admitting California PDMP records); *United States v. Mikaelian*, 11-cr-00922-DDP (CDCA) (admitting California PDMP records); *United States v. Gabriel-Diaz*, 12-cr-00011-CJC (CDCA) (admitting California PDMP records).

requirements can result in civil penalties, licensure suspensions, and disciplinary action.

Prescription drug information is required to be reported to the PDMP database in the state where the prescription is filled, not where the prescription was written. Thus, while all of the prescriptions written by the defendant were written in Pennsylvania, data pertaining to prescriptions filled in New Jersey and New York are contained in these states' PDMP databases. Pennsylvania, New Jersey, and New York all have provisions in their statutes that permit law enforcement to request certain data already in their PDMP databases.

b) <u>The Government's Intended Use of PDMP Data at Trial</u>

The defendant is charged with prescribing controlled substances outside the usual course of professional practice. One of the ways the United States intends to prove the drug charges is with evidence showing how unbelievably extreme the defendant's prescribing practices were. The defendant will be free to cross-examine witnesses, offer his own proof to refute, and/or ultimately argue why his prescribing practices were not outside the usual course of professional practice. The Government anticipates that the defendant will dispute all elements of the drug charges at trial, namely, by claiming that his conduct was consistent with the medical profession's standard of care, and that he intended to engage in legitimate medical treatment.

Thus, there is no question that prescription data is highly relevant in this case. The Eleventh Circuit's opinion in *United States v. Merrill* in instructive:

> [E]vidence of the quantity and combination of prescriptions
> Merrill wrote during the relevant period is directly related
> to the issue of whether Merrill committed healthcare fraud
> by "prescribing excessive and inappropriate quantities and
> combinations of controlled substances to patients outside
> the usual course of professional practice" and whether
> Merrill was relieved of liability under the Controlled
> Substance Act because he acted in the "usual course of
> professional practice." A jury may consider prescription
> data sets outside those specifically charged in the
> indictment to determine whether a physician has exceeded
> "the legitimate bounds of medical practice" and "as
> evidence of plan, design, or scheme."

*United States v. Merrill*, 513 F.3d 1293, 1302 (*citing United States v. Harrison*, 651 F.2d 353, 355 (5th Cir. July 20, 1981) (concluding that in considering whether the defendant exceeded legitimate medical practice, "prescriptions issued at other times were admissible as evidence of plan, design, or scheme.").

During the course of this investigation, the DEA requested from the proper authorities in Pennsylvania, New Jersey, and New York all data in their agency's PDMP database related to prescriptions written by the defendant for the relevant time period. In response to these requests for information, each of these three states provided the bulk prescription data from their databases for the defendant. This is the identical data that can be accessed by pharmacies, prescribers (including the defendant himself while he was practicing), and state regulatory boards, all of whom regularly utilize PDMP data in the usual course of their business for non-law enforcement purposes. The raw PDMP data provided by Pennsylvania, New Jersey, and New York has been produced in discovery to the defendant.

8

The Government's witness regarding the PDMP database will explain its purpose. The purpose of the PDMP is twofold: to be used as a tool to increase the quality of patient care by giving prescribers and dispensers access to a patient's controlled substance prescription medication history, which alerts medical professionals to potential dangers for purposes of making treatment determinations; and to aid regulatory and law enforcement agencies in the detection and prevention of fraud, drug abuse and the criminal diversion of controlled substances.

In this case, the PDMP data and summary charts will establish an array of relevant and highly probative facts, including the number of prescriptions the defendant wrote for Schedule II controlled substances during the relevant period of time; the number of prescriptions the defendant wrote specifically for opioids during the relevant period of time; and the number of prescriptions the defendant wrote for the highest dose of oxycodone during the relevant period of time.

The PDMP data are relevant on multiple independent grounds. First, the PDMP data are proof that the defendant, in fact, issued the controlled substance prescriptions for drugs charged in the Superseding Indictment.[4] Second, and more importantly, the PDMP data are relevant to proving two elements for which the

_____

[4] It is particularly noted that Counts 26 and 27 charge violations of 21 U.S.C. § 856(a)(1), maintaining drug-involved premises. Thus, proof at trial is not limited to the specific patients identified in Counts 1 through 25.

Government bears the burden of proof; that the defendant acted outside the usual course of professional practice, and that the defendant intended to so act. The Government anticipates that the defendant will dispute both elements at trial.

As will be seen from the numbers associated with the raw data, the prescriptions written by the defendant are exceptionally voluminous. To make this data comprehensible for the jury, a DEA analyst has in-put all of the raw PDMP data into massive spreadsheets from which he was able to create comparison charts, graphs, and summaries. After admitting the raw data on a CD, the United States expects that the DEA analyst will testify as to how the charts, graphs, and summaries were created from the raw data.[5] He will also testify as to their statistical accuracy based on the data provided by the three states. The analyst will not be providing any opinion testimony, but rather will be a fact witness simply explaining how the charts were created. The Government then intends to admit these charts, graphs, and summaries pursuant to FED. R. EVID. 1006.

So as to avoid unnecessary delay at trial, the Government will provide finalized PDMP charts, graphs, and summaries to counsel for the defendant prior to trial. If there are any others completed after the time of the initial disclosure, they

_____

[5] This witness has previously provided fact witness testimony in various federal courts across the country regarding charts, graphs, and summaries he created from voluminous prescription records.

will be produced to defense counsel in advance of the analyst's testimony, and, if at all possible, prior to the start at trial.

Finally, individual PDMP reports for certain patients whose medical records will be discussed at trial were requested and provided to the DEA. Most of these individual patient PDMP reports have already been disclosed to the defense. However, all will be produced for the defense prior to trial.

For the reasons set out below, the PDMP data obtained during the course of this investigation, which underlie the charts, graphs, and summaries created by the DEA analyst, is neither hearsay nor testimonial. Furthermore, the data is highly relevant to the charges in this case, and is not so overly prejudicial as to be precluded from admission pursuant FED. R. EVID. 403.

## c) Admissibility of PDMP Records as Business Records

PDMP records are admissible non-hearsay for multiple reasons, and are routinely admitted in federal court throughout the United States.

A record constitutes a "business record" for hearsay purposes if it is made at or near in time by someone with knowledge, if it is kept by an agency in the usual course of its business, and if the records was a regular business practice of that activity. *See* FED. R. EVID. 803(6). As the Third Circuit has explained, "Records should therefore be excluded only when the circumstances of the case raise questions sufficient to overcome the presumption of reliability that exists in properly established business records." *See United States v. Onyenso*, 2013 WL 5322686 (3d

Cir. 2013); *See also United States v. Casoni*, 950 F.2d 893, 909 (3d Cir.1991) (a presumption of accuracy exists for records properly kept in the ordinary course of business); *United States v. Langford*, 647 F.3d 1309, 1327 (11th Cir. 2012) (reliability is the touchstone of a business records determination), *United States v. Skeddle*, 981 F.Supp. 1069, 1073 (N.D. Ohio. 1997) (records kept as part of a regular routine have special guarantees of trustworthiness, and should be admitted unless circumstances indicate a lack of reliability). "The touchstone of admissibility under [Rule 803(6)] is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence." *United States v. Bueno-Sierra*, 99 F.3d 375, 378 (11th Cir. 1996).

Moreover, the Federal Rules of Evidence allow admission of "data compilations, in any form, of public offices or agencies, setting forth…..matters observed pursuant to duty imposed by law as to which matters there was a duty to report." FED. R. EVID. 803(8); *see, e.g., Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 600-01 (8th Cir. 2005) (Surgeon General reports on smoking admissible as public records even though the data came from work conducted by independent, non-government scientists, since reports were prepared pursuant to a legal obligation to report such data). The PDMP data are also separately admissible records of regularly kept activity under Federal Rule of Evidence 803(8), more fully addressed herein, because they track data that pharmacies are mandated to keep and submit as part of their business practices.

As discussed in the section above, state law mandates that pharmacists report certain information regarding prescriptions to their state's PDMP. This data is then maintained in the usual course of business in a database managed by the state agency in charge of PDMP data — here, the Pennsylvania Department of Health, the Bureau of Consumer Affairs in New Jersey, and the New York State Department of Health. Once reported as required, the data for a particular prescription can be found in the business records of the state PDMP agency and of the reporting pharmacy.[6]

Federal regulations subject pharmacies with DEA licenses to dispense controlled substances pursuant to various regulations. One such regulation is the requirement that pharmacies maintain copies of filled prescriptions for controlled substances for at least two years. See 21 C.F.R. 1304.04(g)(2), (4). The fact that federal regulations mandate this prescription record-keeping does not mean that the records kept pursuant to these regulations are not business records of the pharmacy. *See United States v. Towns*, 718 F.3d 404, 407–10 (5th Cir. 2013) (rejecting the defendant's argument that drug inventory logs are not business records of the pharmacy because the pharmacy only maintained the logs due to federal regulations). Based on this same rationale, the fact that the above-named state

---

[6] The same exact data for each prescription should also be found in the defendant's medical records for each patient.

13

agencies are required by state law to maintain certain prescription data in an electronic repository, does not mean that the data maintained in the usual course of the agency's business is not a business record.

Copies of prescriptions for controlled substances, and the data contained on those hard-copy prescriptions, are business records of pharmacies, because they're maintained in the usual course of business. Similarly, it is the usual course of business for the designated state agencies in Pennsylvania, New Jersey, and New York to be the repository for the reported prescription data. The data of a prescription in the PDMP database is no less a business record of the agency required to maintain it in the usual course of that agency's business, than is the data on a hard-copy prescription maintained in the usual course of a pharmacy's business.

In *United States v. Mirilishvili*, the defendant sought to preclude the United States from admitting New York PDMP data at trial on the grounds that it was hearsay and did not have sufficient indicia of reliability. *United States v. Mirilishvili*, 2016 U.S. Dist. LEXIS 21268, *14–16 (SDNY 2016). In denying the defendant's motion in limine, the Court explained:

> The Government says it intends to offer New York State
> Bureau of Narcotics Enforcement ("BNE") records
> documenting each prescription for a controlled substances
> written by the defendant and filled at a New York
> pharmacy. The defendant moves to preclude the
> Government from offering the BNE records on hearsay
> grounds. The Government argues that the BNE records are
> admissible pursuant to FED. R. EVID. 803(6) (the business
> records exception).

14

Assuming the Government can establish that the particular BNE documents it intends to offer are "records of regularly conducted activity" (see FED. R. EVID. 803(6)), the records will be admitted. Indeed, BNA records (and similar documents from other states) are classic business records, regularly admitted in courts in this Circuit pursuant to FED. R. EVID. 803(6). *See, e.g., United States v. Lowe,* 14 Cr. 055 (LGS) (admitting BNE records as business records); *United States v. Wiseberg*, et al., 13 Cr. 794 (AT) (admitting New Jersey Prescription Monitoring Program ("PMP") data as business records); *see also United States v. Cooper*, 868 F.2d 1505, 1514 (6th Cir. 1989) (no error in admitting pharmacy prescription log book as business record in prescription drug diversion trial).

To the extent the defendant wishes to test the accuracy or significance of BNE data — for example, by suggesting that BNE data may capture forgeries or fake prescriptions — he can do so by cross-examining the appropriate witness.

*Mirilishvili*, 2016 U.S. Dist. LEXIS 21268, *14–16 (emphasis added).

For these reasons, the PDMP data obtained during the investigation of this case, and the charts, graphs, and summaries created from this data, are admissible non-hearsay pursuant to FED. R. EVID. 803(6).

## d) Admissibility of PDMP Records as Public Records

Even if the Pennsylvania, New Jersey, and New York PDMP data was not admissible as business records of the state agencies required by law to maintain the PDMP database, the data would still be admissible non-hearsay pursuant to Rule 803(8).

"Under Federal Rule of Evidence 803(8), documents are generally not excluded as hearsay if they are records, reports, statements, or data compilations,[7] in any form, of public agencies, which set forth the activities of the agency or matters observed pursuant to a legal duty to report, unless circumstances indicate a lack of trustworthiness." *United States v. Rivera-Soto*, 451 F. App'x 806, 807 (11th Cir. 2011) (emphasis added) (citing FED. R. EVID. 803(8)). As already discussed, pharmacists have a legal duty to report certain prescription data, and the collecting state agency has a parallel legal duty to maintain that data in a PDMP database. These public records are accessible to all parties designated by the various state statutes that have a legitimate public health or law enforcement need for this data.

States' PDMP databases are substantially similar to the National Firearms Registration and Transfer Record ("NFRTR"), which is required by law to maintain reported data regarding firearm registration. Data maintained by the NFRTR pursuant to law is certainly considered a public record. *See United States v.*

---

[7]     The phrase "data compilations" is not in the current version of Rule 803(8). However, the 2011 Amendments state, and other courts have held, that the changes to the language in Rule 803 caused by the 2011 Amendments were stylistic and not substantive. See Fed. R. Evid. 803, Notes of Advisory Committee on 2011 Amendments ("The language in Rule 803 has been amended as part of the restyling of the Evidence Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only. There is no intent to change any result in any ruling on evidence admissibility.") *See also, e.g., United States v. Hassan*, 742 F.3d 104, 133 n.24 (4th Cir. 2014); *United States v. Irvin*, 656 F.3d 1151, 1164 n.8 (10th Cir. 2012).

*Giambro*, 544 F.3d 26, 31 (1st Cir. 2008) (upholding the admission of testimony under Rule 803(10) (absence of a public record), that there was no record in the NFRTR to show the firearm was registered to the defendant); *accord United States v. Rith*, 164 F.3d 1323, 1333–37 (10th Cir. 1999) (citing various other circuit court cases in which the admission of evidence of the absence of a public record in the NFRTR was upheld). *See also United States v. Weiland*, 420 F.3d 1062, 1074–75 (9th Cir. 2005) (fingerprints and photographs contained in a penitentiary packet "are public records of routine and non-adversarial matters that fall within Rule 803(8)(b)"); *United States v. Johnson*, 722 F.2d 407, 410 (8th Cir. 1983) (holding that a serial number report which the ATF had a duty to keep was admissible). For the same reasons, PDMP data maintained by state agencies pursuant to law also qualifies as a public record.

For all of these reasons, the PDMP data maintained by state agencies in Pennsylvania, New Jersey, and New York is also admissible as public records pursuant to FED R. EVID. 803(8).

### e) <u>Admissibility of PDMP Records Under the Residual Exception</u>

Even if the PDMP data is not admissible under either of the above exceptions, they are admissible under the FED. R. EVID. 807 residual exception. This exception applies to statements not specifically covered by other hearsay exceptions, but that have "equivalent circumstantial guarantees of trustworthiness." *Id.* For a statement to fall within the residual exception, the following factors must be met: (1) the

statement must have "equivalent circumstantial guarantees of trustworthiness;" (2) the statement is offered as evidence of a material fact; (3) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; (4) the general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence; and (5) the statement must be disclosed to the adverse party sufficiently before trial. *Id.*

The PDMP records meet all of these factors. First, the PDMP data has circumstantial guarantees of trustworthiness. That is because, among other things,[8] the PDMP reporting requirements are mandated by law. *See United States v. Banks*, 514 F.3d 769, 778 (8th Cir. 2009) (affirming district court's decision to allow ATF report into evidence under the residual exception, noting "when a statement is made concurrent with a duty to make an accurate record as part of a continuing job or occupation we can infer a certain level of trustworthiness."). Second, as described in greater detail below, the PDMP data will be offered as evidence of crucially relevant, material facts. Third, the PDMP data are more probative of the defendant's illegal prescribing practices than any other evidence. The only evidence arguably more probative than the PDMP data are every single one of the controlled substance

---

[8] The witnesses who will lay the foundation for the admission of the PDMP records will provide other reasons why these records are inherently reliable.

18

prescriptions the defendants issued.  This would entail the United States having to call a staggering amount of records custodians from each pharmacy that filled these prescriptions, which is both unreasonable and impracticable.  Fourth, the PDMP records serve the interests of justice because they paint a fair and accurate depiction of the defendant's prescribing practices during the time frame at issue.  Further, allowing this data to be admitted will reduce the number of witnesses at trial and the length of trial itself.  *See Robinson v. Shapiro*, 646 F.2d 734, 743 (2d Cir. 1981) (explaining that Rule 807's fairness requirement is essentially a restatement of FED. R. EVID. 102, which requires construction of the rules to "secure fairness" and aid in the "elimination of unjustifiable expense and delay.").  Fifth, the PDMP records have been disclosed to the defendants well in advance of trial.

For all these reasons, the PDMP data is alternatively admissible under Rule 807.

### f)  PDMP Data is Not Barred from Admission by the Confrontation Clause

As noted above, PDMP data is routinely admitted in trials such as this, and the Government has yet to find a single case in which a court has ever held PDMP data to be testimonial.  If the data is not testimonial, the Confrontation Clause does not affect admissibility.

"A statement is testimonial if 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *United States v. Naranjo*, 634 F.3d 1198, 1213 (11th Cir. 2011)

(*citing Crawford v. Washington*, 541 U.S. 31, 68 (2004)).  However, not all such

statements are necessarily testimonial.  To qualify as "testimonial" a statement must

have a primary purpose of establishing or proving past events potentially relevant to

later criminal prosecution.  Here, the mandatory reporting of data is not testimonial,

despite the fact that the data might one day be used in criminal proceedings.  To the

extent that obligatory reporting of bulk data is a "statement" at all, it is done due to

legal obligation for every single controlled substances prescription filled in

Pennsylvania, New Jersey, and New York.  The reporting is not done just for

prescriptions that might be involved in a criminal prosecution one day.

Other than identifying the dispensing pharmacy and noting the date

dispensed, all other information reported to states' PDMP databases is simply a

regurgitation of information written on the prescription by the prescriber.  Nor does

the fact that pharmacists can refuse to fill a prescription they believe is illegitimate

mean that reporting, as required by law, the information written on the face of a

filled prescription is somehow a testimonial statement of the pharmacist.

Finally, as both the Supreme Court and Third Circuit have explained, business

records are not testimonial.  *Crawford* at 56; *United States v. Totoro*, 2017 WL

3189216 (3d Cir. 2017); *United States v. Brown*, 534 Fed. Appx. 132 (3d Cir. 2013);

*United States v. Merritt*, 2013 WL 124947 (3d Cir. 2013).  Accordingly, summary

evidence also is not testimonial if the evidence underlying the summary is not

testimonial.  *See United States v. Benko*, 2016 WL 4705572 (3d Cir. 2016), citing

FED. R. EVID. 803(6) and 1006.

As discussed above, PDMP data is a business record, and for the reasons set

out in the above cases, are categorically not testimonial in nature.

### g) PDMP Data is Relevant Evidence Not Barred by Rule 403

The proffered evidence is also admissible under Rule 403 because its probative

value is not substantially outweighed by a risk of unfair prejudice to the defendant.

See FED. R. EVID. 403; *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009)

("Unfair prejudice does not simply mean damage to the opponent's cause.  If it did,

most relevant evidence would be deemed [unfairly prejudicial."); *United States v.*

*Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987) (Rule 403 is "an extraordinary remedy

to be used sparingly").

## IV.  CONCLUSION

For all the reasons stated herein, the Government respectfully requests that

the Court authorize the admission of PDMP data.

Respectfully submitted,

DAVID J. FREED
United States Attorney


By:  /s/ Michelle L. Olshefski
     MICHELLE L. OLSHEFSKI
     Assistant U.S. Attorney

Dated:  February 20, 2018

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 3:16-CR-194 |
| | : | |
| v. | : | (JUDGE CAPUTO) |
| | : | |
| FUHAI LI, | : | (ELECTRONICALLY FILED) |
| Defendant | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of February, 2018, I caused the foregoing "**Government's Motion in Limine to Admit Prescription Drug Monitoring Program Data**" to be served upon defense counsel Michael Weinstein and William Ruzzo, counsel of record for the defendant, and that defense counsel are filing users under the ECF system.

/s/ Michelle L. Olshefski
Michelle L. Olshefski
Assistant U.S. Attorney