UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 3:16-CR-194 |
| | : | |
| v. | : | (JUDGE CAPUTO) |
| | : | |
| FUHAI LI, | : | (ELECTRONICALLY FILED) |
| Defendant | : | |

GOVERNMENT'S MOTION IN LIMINE
TO ADMIT PATIENT MEDICAL RECORDS

I. INTRODUCTION

On October 17, 2017, a federal grand jury returned a 32-count Superseding Indictment charging the defendant, Fuhai Li (the defendant), with various violations of federal law. Counts 1 through 23 charge violations of 21 U.S.C. § 841(a)(1), for the defendant's distribution and dispensing of controlled substances outside the usual course of professional practice and not for a legitimate medical purpose. Count 24 charges a violation of 21 U.S.C. § 841(a)(1), for the defendant's distribution and dispensing of a controlled substance resulting in serious bodily injury and death of a person. Count 25 charges a violation of 21 U.S.C. § 861(f), for the defendant's distribution and dispensing of a controlled substance to a pregnant individual. Counts 26 and 27 charge violations of 21 U.S.C. § 856(a)(1), for the defendant's maintaining locations at 104 Bennett Avenue, Suite 1B, Milford, Pennsylvania, and 200 3rd Street, Milford Pennsylvania, for the purpose of unlawfully distributing controlled substances. Counts 28 and 29 charge violations of 18 U.S.C. § 1957, for

1

the defendant's engaging in monetary transactions in property derived from a specified unlawful activity. Counts 30 through 32 charge violations of 26 U.S.C. § 7201, for the defendant's tax evasion. The 27-page Superseding Indictment, which includes a detailed recitation of facts supporting the charges, also includes a forfeiture allegation seeking forfeiture of various property and U.S. Currency. (*See MDPA 3-cr-16-194, Doc. 47*).[1]

The criminal charges stem from the defendant's medical practice from August 2011 through January 2015. During those years, the defendant treated hundreds of patients who said they were suffering from pain. Notably, he treated the vast majority of these patients by writing prescriptions for Schedule II controlled substances. In discovery, the Government provided the defendant with the same mirror image of his electronic medical files seized from his practice on January 27, 2015. A jury trial is scheduled to begin on May 1, 2018.

Counts 26 and 27 of the Superseding Indictment allege that the defendant maintained drug-involved premises at two locations where he conducted his medical practice in Milford, Pennsylvania.[2] The defendant's treatment of all patients, not

---

[1]   The defendant was first charged in a 24-count Indictment returned by a federal grand jury on July 20, 2016. (*See MDPA 3-cr-16-194, Doc. 1*).

[2]   Count 26 specifically identifies the defendant's office address at 104 Bennett Avenue, Suite 1B, Milford, Pike County, Pennsylvania. Count 27 specifically

only the ones specifically identified in Counts 1 through 25 of the Superseding Indictment, is relevant evidence in addressing the crimes alleged in Counts 26 and 27. Accordingly, the Government will introduce evidence in the form of witness testimony from several former patients, as well as all medical files reviewed by the Government's expert medical witness, Dr. Stephen Thomas.

II. <u>**FACTUAL BACKGROUND**</u>

The defendant treated hundreds of patients from 2011 through January 2015. In conjunction with that treatment, the defendant created and maintained electronic medical files for each patient. The defendant noted the medical files to document how he treated the patients. He instructed his staff to make notes in the same files about their interaction with the patients, and his staff did that. Accordingly, the medical files are filled with documentation about how the defendant interacted with, and his treatment of, the patients. The medical files record things the patients said to the defendant; this includes statements about their injuries, their pain, the impact of their medication, medical events in their lives, and events in their personal lives. The medical files also record things the defendant observed about the patients, as

---

identifies the defendant's office address at 200 3rd Avenue, Milford, Pike County, Pennsylvania.

3

well as things the defendant said to the patients about their pain, their medication, and their treatment.

These medical files played an important role in guiding the defendant's prescribing to his patients. The medical records were electronically stored in the defendant's offices, first on Bennett Avenue and then on 3rd Street in Milford, and they were "updated" when a patient attended a medical appointment. The defendant also had access to the electronic medical files from outside the office, for example, from his residences. The DEA seized these medical files pursuant to a federal search warrant on January 27, 2015.

A review of the electronic medical files demonstrates that some of the patients seeking treatment for pain signed a Controlled Substances "Responsibility Agreement." The "Responsibility Agreement" purported to establish the ground rules for treatment by the defendant. A review of the electronic medical files also demonstrates that many of the patients seeking treatment for pain submitted urine drug screens during their office visits (hereinafter the "lab reports"). The lab reports provided information to the defendant about at least four things. First, if the patient was taking the controlled substance(s) he was prescribing. Second, if the patient was taking a controlled substance that was illegal (e.g., cocaine). Third, if the patient was taking a controlled substance that could be prescribed, but one that the defendant was not prescribing (e.g., Valium). Fourth, if the patient has apparently tampered with the urine sample.

4

The lab reports disclosed test results to the defendant, either showing that the patient was taking the controlled substance he or she was prescribed by the defendant, or that the patient was not taking a controlled substance prescribed by the defendant, or was taking an illegal substance, or was taking a controlled substance not prescribed by the defendant. A comparison of the (a) notes in the medical file documenting treatment of the patient; (b) results of the patient's urine drug screen; and (c) the "Responsibility Agreement," shows the defendant frequently and blatantly ignored the very rules he purportedly established for his patients. For several patients on several occasions, the defendant read lab reports that reported inconsistent lab results, and yet the defendant often did nothing about it (*i.e.,* he continued to prescribe them with a variety of controlled substances). This pattern was identified by Dr. Stephen Thomas, an expert witness for the Government, as one of many key factors in his conclusion that the defendant was writing prescriptions that were outside the usual course of professional practice and not medically legitimate. This pattern is proof of the defendant's violations as alleged in all Counts of the Superseding Indictment.

The Government submits there are multiple legal bases to support the admission of the medical files without corresponding patient testimony. First, the medical files are business records, which are admissible under Federal Rule of Evidence 803(6). This approach places the medical file before the jury as substantive evidence that can be considered for the truth of the matter asserted. Second, the

5

medical files are admissible to show the impact they had on the defendant in his prescribing controlled substances to his patients. This approach means the statements of the patient in the medical files are not being offered for the truth of the matter asserted therein, which means that evidence is not hearsay as defined by Federal Rule of Evidence 801(c). This approach would place portions of the medical files before the jury to give the jury context for what the defendant did - and failed to do - when he treated his patients. Further, the documented statements of the defendant and his staff that are contained in the medical files were made in response to his patients. These documented statements are admissions by a party opponent, are not hearsay under Federal Rule of Evidence 801(d)(2), and are admitted as substantive evidence.

III. <u>LEGAL DISCUSSION</u>

The United States Supreme Court has defined what is -- and what is not -- a testimonial statement under the Sixth Amendment. The Supreme Court cases, and especially the recent decision in *Ohio v. Clark*, 135 S.Ct. 2173 (2015), clearly establish that medical records are not testimonial hearsay because their primary purpose is assisting the treatment of medical patients. In *Clark*, the Supreme Court noted "[w]e have never suggested, however, that the Confrontation Clause bars the introduction of all out-of-court statements that support the prosecution's case. Instead, we ask whether a statement was given with the 'primary purpose of creating

6

an out-of-court substitute for trial testimony.'" *Id.* at 2183. (internal citation omitted). The primary purpose of the defendant's medical records was the treatment of his patients in his medical offices; accordingly, there is no Sixth Amendment violation when those records are introduced without corresponding patient testimony.

    a) <u>Business Records Exception</u>

Hearsay is an out-of-court statement that is offered at trial, or other proceeding, to prove the truth of the matter asserted. Fed. R. Evid. 801(c). To be admitted at trial as substantive evidence, an out-of-court statement must be exempt from the hearsay rule, *see* Fed. R. Evid. 801(d), or fall within an exception to the hearsay rule, *see* Fed. R. Evid. 803, 804, and 807. In a criminal trial, hearsay must also overcome a second hurdle, the Sixth Amendment's Confrontation Clause. That clause reads "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

The medical files are admissible as business records under Fed. R. Evid. 803(6), and they do not violate the Confrontation Clause. Business records that are the "record of an act, event, condition, opinion, or diagnosis" are admitted at trial as an exception to the hearsay rule if:

        (A)    the record was made at or near the time by – or from information transmitted by – someone with knowledge;

7

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was regular practice of that activity;

(D) all these conditions are shown by the testimony of a custodian or other qualified witness….; and

(E) the opponent does not show that the source of information or method or circumstances of preparation indicates a lack of trustworthiness.

There is no question the defendant's medical files are business records that meet the requirements of subsections (A) through (E).

In *Crawford v. Washington*, 124 S.Ct. 1354 (2004), the Supreme Court reviewed a case where the petitioner stabbed a man (Kenneth Lee) who allegedly raped his wife (Sylvia). At the trial, the wife refused to testify on the grounds of state marital privilege, and the prosecution therefore played a tape-recorded statement where the wife (Sylvia) described the stabbing. *Id.* at 1357-58. The question the case presented on appeal was whether the procedure complied with the Sixth Amendment's Confrontation Clause. *Id.* *Crawford* found the procedure violated the Sixth Amendment because "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity to cross-examine." *Id.* at 1374.

The *Crawford* Court explained "[w]e leave for another day any effort to spell out a comprehensive definition of testimonial. Whatever else the term covers, it

applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or a former trial; and to police interrogations." *Id.* In discussing the issue of admissible versus inadmissible hearsay, the *Crawford* Court also noted that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial - for example, business records[.]" *Id.* at 1367.

In the aftermath of *Crawford*, and in the absence of "a comprehensive definition of testimonial" hearsay from the Supreme Court, district and appellate courts grappled with the question of whether evidence should be admitted or excluded under the Sixth Amendment's Confrontation Clause.

The decision in *Crawford* was discussed and explained in a number of other Supreme Court decisions from 2006 to the present, cases that include *Davis v. Washington* and *Hammon v. Indiana*, 547 U.S. 813 (2006), *Worton v. Bockting*, 549 U.S. 406 (2007), *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527 (2008), *Michigan v. Bryant*, 1143 S.Ct. (2011), *Bullcoming v. New Mexico*, 131 S.Ct. 2705 (2011), and *Ohio v. Clark*, 135 S.Ct. 2173 (2015).

In *Clark*, teachers discovered marks on the body of L.P., who was a 3-year-old boy. The teachers asked L.P. who did this and what happened, and L.P. answered "something like Dee, Dee." The defendant's nickname is "Dee." At trial, the prosecution introduced the statements of L.P. to his teacher, but L.P. did not testify. The defendant was convicted and appealed. 135 S.Ct. at 2177-78. The issue in *Clark* was whether the Sixth Amendment's Confrontation Clause prohibited prosecutors

from introducing those statements when the child was not available to be cross-examined." Clark held there was no Confrontation Clause violation under these facts. *Id.* At 2177.

After reviewing the decisions in *Crawford*, *Davis*, *Hammon*, and *Bryant*, the *Clark* Court noted that "under our precedents, a statement cannot fall within the Confrontation Clause unless its primary purpose was testimonial. "Where no such primary purpose exists, the admissibility of a statement is the concern of the state and federal rules of evidence, not the Confrontation Clause." *Id.* at 2180 (quoting *Michigan v. Bryant*). The *Clark* Court explained the case presented "the question we have repeatedly reserved: whether statements to persons other than law enforcement officers are subject to the Confrontation Clause . . . considering all the relevant circumstances here, L.P.'s statements were not made with the primary purpose of creating evidence for [defendant] Clark's prosecution. Thus, their introduction at trial did not violate the Confrontation Clause." *Id.* at 2181. The *Clark* Court observed "[s]tatements made to someone who is not principally charged with uncovering and prosecuting criminal behavior are significantly less likely to be testimonial than statements given to law enforcement officers," and stressed that "[c]ourts must evaluate challenged statements in context, and part of that context is the questioner's identity." *Id.* at 2l82.

Turning to the present case, the primary purpose of the medical files was to assist the defendant in his work as a doctor. He used these files in the treatment of

his pain patients from 2011 through January 2015. The medical records were created and maintained as part of the defendant's business. The defendant and his staff documented their treatment of the patients in the files. The defendant stored the electronic patient files in his office because they were an integral part of his work.

*Clark* emphasized that courts should look at "the questioner's identity" in determining whether a statement is testimonial. Here, it was the defendant who was asking the questions and the defendant's patients who were answering those questions. These medical files were not made in response to law enforcement questioning, nor were they created to provide evidence at trial. The medical files were created for the sole purpose of assisting the defendant in his practice of medicine. As such, there is no legal basis to conclude the medical files violate the Sixth Amendment's Confrontation Clause. The patient files should therefore be admitted as business records regardless of whether the corresponding patient testifies or not.

### b) Medical Files Not Offered for the Truth of the Matter Asserted

An essential component of Rule 801(c)'s definition of hearsay is that the out-of court statement is offered for the "truth of the matter asserted." If the out-of-court statement is offered for another legitimate evidentiary purpose (i.e.. not the truth), then the statement is not hearsay and is properly admitted at trial. The case law is filled with examples where out-of-court statements were properly admitted to show

the impact they had on the listener. *See, e. g., United States v. Gaytan*, 649 F.3d 573, 579 (7th Cir. 2011) ("[A] confidential informant's out-of-court statements are not hearsay if they are offered not for the truth but to put the defendant's statement's in context or to make what he said and did in reaction to the informant's statements intelligible to the jury."); *United States v. White*, 639 F.3d 331, 337-338 (7th Cir. 2011) (finding command in robbery demand note is not assertion of fact and therefore not hearsay, and further, that statements in note that "I have a gun" and "no one will get hurt" were not offered for the truth but for the effect on the teller); *United States v. Bellamo,* 176 F.3d 580, 586-87 (2d Cir. 1999) (statements that person was killed because he was dealing drugs not hearsay because offered for listener's state of mind, not reason for murder); *United States v. Nieto*, 60 F .3d 1464 (10th Cir. 1995) (instructions to defendant to take car and make drugs into squares introduced to show impact on listener); and *United States v. Lambinus*, 747 F .2d 592 (10th Cir. 1984), cert. denied, 477 U.S. 1067 (1985) (statements introduced for effect on the listener).

If the Court rejects the use of the Business Records Exception to admit the medical files, it should admit the files for a non-hearsay purpose: to show the impact they had on the defendant in his treatment of pain patients. This approach would permit the jury to see how the defendant reacted to the information he was presented by the patient. For example, if a patient submitted an "inconsistent" urine test result because they did not have Oxycodone in their urine - - even though the defendant

prescribed it - - then the jury will be in a better position to evaluate whether the defendant discharged the patient, placed the defendant on probation, or ignored the lab result and kept prescribing Oxycodone to the patient, and whether the defendant's actions in that regard were criminal. Anything the defendant documented in the medical files addressing these types of patients and situations, or anything his staff wrote in the files, is the admission of a party-opponent. That admission is not hearsay. Fed. R. Evid. 801(d)(2)(A), (d((2)(C), and (d)(2)D), apply to these situations and support the admission of statements as substantive evidence.

Ultimately, the medical files place the defendant's reactions in a proper context and make them understandable for the jury. The defendant's reaction to information provided by, and about, his patients is fundamentally important in the jury's evaluation of whether he was acting within the usual course of professional practice in writing the prescriptions at issue. It will be a key factor in shaping the jury's decision in this case. For these reasons, the medical files should be admitted to show the impact they had on the defendant, and the defendant's statements should be admitted as substantive evidence.

Finally, courts have consistently held that Rule 703 articulates a firmly rooted hearsay exception and that expert testimony based on such reliable material is admissible in a criminal trial. *See, e.g., United States v. Brown,* 299 F.3d 1252, 1258 (11th Cir. 2002) (rule is firmly rooted hearsay exception), *vacated on other grounds,* 123 S. Ct. 1928 (2003) *38 *United States v. Corey,* 207 F.3d 84, 92 (1st Cir. 2000)

(reliance on hearsay by law enforcement expert, who spoke to gun manufacturer with respect to interstate nexus requirement, did not violate Confrontation Clause); *Barrett v. Acevedo,* 169 F.3d 1155, 1162 n.7 (8th Cir. 1999); *United States v. Abbas,* 74 F.3d 506, 512-13 (4th Cir. 1996) ("the right of confrontation is not violated by an expert's reliance on out-of-court sources where the utility of trial confrontation would be remote and of little value to either the jury or the defendant"); *Reardon v. Manson,* 806 F.2d 39, 41 (2d Cir. 1986) ("[e]xpert reliance on the output of others does not necessarily violate the confrontation clause where the expert is available for questioning concerning the nature and reasonableness of his reliance").

This was true even before the enactment of the Federal Rules of Evidence. "It has long been the rule of evidence in the federal courts that an expert witness can express an opinion as to value even though his opinion is based in part or solely upon hearsay sources." *United States v. Williams,* 447 F.2d 1285, 1290 (5th Cir. 1971), citing *United States v. Alker,* 260 F.2d 135 (3d Cir. 1958). While rejecting a Confrontation Clause and hearsay challenge, the Fifth Circuit explained that "the opinion of expert witnesses must invariably rest, at least in part, upon sources that can never be proven in court. An expert's opinion is derived not only from records and data, but from education and from a lifetime of experience. Thus, when the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion

14

is regarded as evidence in its own right and not as hearsay in disguise." *Williams,* 447 F.2d at 1290.

## IV. CONCLUSION

Based on the facts, case law, and legal analysis detailed above, the Government respectfully requests that Court grant the within motion in limine.

        Respectfully submitted,

        DAVID J. FREED
        United States Attorney


By:   /s/ Michelle L. Olshefski
       MICHELLE L. OLSHEFSKI
       Assistant U.S. Attorney

Dated: February 20, 2018

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 3:16-CR-194 |
| | : | |
| v. | : | (JUDGE CAPUTO) |
| | : | |
| FUHAI LI, | : | (ELECTRONICALLY FILED) |
| Defendant | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th February, 2018, I caused the foregoing "**Government's Motion in Limine to Admit Patient Medical Files**" to be served upon defense counsel Michael Weinstein and William Ruzzo, counsel of record for the defendant, and that defense counsel are filing users under the ECF system.

/s/ Michelle L. Olshefski
Michelle L. Olshefski
Assistant U.S. Attorney