UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | NO. 3:16-CR-194 |
| | : | |
| v. | : | (JUDGE CAPUTO) |
| | : | |
| FUHAI LI, | : | (ELECTRONICALLY FILED) |
| Defendant | : | |

### GOVERNMENT'S BRIEF IN SUPPORT OF MOTION IN LIMINE REGARDING ADMISSION OF ARCOS DATA

I. Introduction

Counts 1 through 23 charge violations of 21 U.S.C. § 841(a)(1), for the defendant's distribution and dispensing of controlled substances outside the usual course of professional practice and not for a legitimate medical purpose. Count 24 charges a violation of 21 U.S.C. § 841(a)(1), for the defendant's distribution and dispensing of a controlled substance resulting in serious bodily injury and death of a person. Count 25 charges a violation of 21 U.S.C. § 861(f), for the defendant's distribution and dispensing of a controlled substance to a pregnant individual. Counts 26 and 27 charge violations of 21 U.S.C. § 856(a)(1), for the defendant's maintaining locations at 104 Bennett Avenue, Suite 1B, Milford, Pennsylvania, and 200 3rd Street, Milford Pennsylvania, for the purpose of unlawfully distributing controlled substances. Counts 28 and 29 charge violations of 18 U.S.C. § 1957, for the defendant's engaging in monetary transactions in property derived from a specified unlawful activity. Counts 30 through 32 charge violations of 26 U.S.C. §

1

7201, for the defendant's tax evasion. The 27-page Superseding Indictment, which includes a detailed recitation of facts supporting the charges, also includes a forfeiture allegation seeking forfeiture of various property and U.S. Currency. (*See MDPA 3-cr-16-194, Doc. 47*).[1]

The Government moves in limine for an order authorizing the admission of evidence from a data compilation at trial. The Government moves to admit records from the federal ARCOS database ("Automation of Reports and Consolidated Orders System"), which tracks wholesale orders shipped to pharmacies for drugs, including Schedule II and III narcotics, which includes drugs relevant here; oxycodone (Oxycontin), fentanyl, hydromorphone (Dilaudid), and hydrocodone (Vicodin). The data tracked by ARCOS includes the drug type, strength, volume, and the date of shipment to the ordering pharmacy. The ARCOS data shows the totality of "front end" orders of Schedule II and III narcotics by pharmacies (i.e., ARCOS data), with the "back end" distributions of such drugs by pharmacies (i.e. PDMP data).[2]

---

[1] The defendant was first charged in a 24-count Indictment returned by a federal grand jury on July 20, 2016. (*See MDPA 3-cr-16-194, Doc. 1*). The tax evasions charges in the first indictment were identified as counts 22 through 24.

[2] By way of a Motion in Limine filed on February 20, 2018, the Government moved for admission of prescription data compiled in a Prescription Data Monitoring Program (PDMP). *See MDPA 3-cr-16-194, Docs. 84, 85.* Pursuant to statutes in Pennsylvania, New Jersey, and New York, individuals authorized to directly dispense controlled substances are mandated by law to report certain information about each prescription to their respective PDMP database. Pennsylvania P.L. 2911, Act 191; N.J.S.A. 45:1-45, *et. seq.*; N.Y.P.L. 2911, No. 191. While the reporting

Absent a defense agreement to stipulate to the admissibility of the evidence, the Government will call an administrator from ARCOS to testify about how the database tracks and maintains data. The administrator will confirm that wholesalers are legally mandated to report the foregoing data to the database. See 21 US.C. § 827 (d)(1) (mandated reporting to ARCOS).[3] The witness will

---

requirements are slightly different in each state, the PDMP databases for Pennsylvania, New Jersey, and New York all contain information identifying, among other things: (1) the drug type and quantity of the dispensed controlled substances; (2) the date the prescription was written and the date it was dispensed; (3) information about the prescriber; and (4) information about the prescription recipient. Failure to comply with theses mandatory reporting requirements can result in civil penalties, licensure suspensions, and disciplinary action.

[3] The Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. § 801, *et seq.* ("Act") established a closed system of drug distribution for legitimate handlers of controlled substances. The statute attempts to control the flow of controlled substances through registration of and record keeping by all those within the "legitimate distributional chain", and prohibition of all transactions outside that chain. *See* U.S. Code Cong. & Admin. News 4566, 4569 (1970). Thus, the Act requires those who manufacture, distribute, import, export, dispense, and/or administer controlled substances to register with the Attorney General, 21 U.S.C. §§ 822–823, and adhere to certain record keeping and reporting requirements. 21 U.S.C. § 827, 21 C.F.R. § 1304.01, *et seq.* Manufacturers, distributors and wholesalers of controlled substances are required to file records of sales to physicians and other medical practitioners with the DEA **Automation of Reports and Consolidated Orders System** ("ARCOS") unit in Washington, D.C. 21 C.F.R. § 1304. The ARCOS unit, in turn, identifies those physicians and other medical practitioners who have purchased large quantities of controlled substances through the issuance of Excessive Purchase Reports.

The Act also authorizes the DEA to conduct periodic inspections of the establishments of those required to register with the Attorney General. 21 U.S.C. § 822(f). DEA regulations evidence an intent by the Agency to conduct such inspections at least once every three years. 21 C.F.R. § 1316.13. In addition, the Act authorizes

authenticate the relevant ARCOS data for several pharmacies in the defendant's general prescribing area for the time period relevant in this case, based on which the Government will move to admit summaries and excerpts of the data.[4]

The parties held a meet-and-confer at which defense counsel stated that he opposes the instant motion. Defense counsel opposes any information outside the specific counts of 21 U.S.C. § 841(a)(1) in the Superseding Indictment. However, the Government points to Counts 26 and 27, both of which charge violations of maintaining drug-involved premises, thereby making the evidence relevant and admissible.

## II. Relevance

The ARCOS data meets Fed. R. Evid. Rule 401's relevancy requirements. Relevant evidence is evidence having "any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. To establish that evidence is relevant, "[a]ll that is needed is some showing of proper relevance"; the burden is not onerous.

---

administrative inspections of "controlled premises," e.g. places where original or other records or documents required thereunder are kept or are required to be kept, pursuant to an applicable inspection warrant. 21 U.S.C. § 880(a) and (b).

[4] The local pharmacies included in the data are Rite Aid, CVS, Alitons, Walmart, and the Medicine Shop.

*United States v. Sampson*, 980 F.2d 883, 888 (3d Cir.1992). Generally, evidence is admissible if it is relevant to charges and claims being tried. *United States v. Hedgepeth*, 418 F.3d 411, 419 (4th Cir. 2005) (citing Fed. R. Evid. 402). "Relevance is typically a low bar to the admissibility of evidence, even though other Federal Rules of Evidence may otherwise limit such admissibility." *Jones v. Ford Motor Co.*, No. 05-1342, 2006 WL 3055492, at *2 (4th Cir. Oct. 272006) (unpublished). "The trial court must admit evidence that is (1) relevant, and (2) not inadmissible under, *inter alia*, some other rule," *United States v. Evans*, 728 F.3d 953, 961 (9th Cir. 2013), and the defense does not offer another basis for exclusion.

ARCOS data is relevant in this case because it tends to show that the defendant acted outside the course of professional practice by virtue of his excessive over-prescribing habits for narcotic pain medications. From the time the defendant established his medical practice in Milford, Pennsylvania in or about August of 2010, the quantity of oxycodone and other Schedule II and III drugs ordered by area pharmacies skyrocketed. The numbers related to the increased order quantities coincide with multiple pharmacies breaking professional ties with the defendant and refusals to continue to fill his prescriptions for Oxycodone and other Schedule II and III drugs. After severing of professional relationships, or only selectively filling the defendant's narcotic prescriptions, ARCOS data demonstrates a dramatic decrease in orders from local pharmacies for the drugs at issue.

The ARCOS data graphically depicts the excessive over-prescribing by what can accurately be described as a small town physician of the most highly abused and most dangerous doses of Schedule II controlled substances. The data graphically demonstrates the before and after of the defendant's relationships with the pharmacies in his general prescribing area. The dramatic numbers also corroborate other relevant evidence, such as witness testimony and decisions made by local pharmacies to cut ties or severely limit professional relationships with the defendant due to excessive prescribing of dangerous opioid medications.

The ARCOS data is relevant to show that the defendant acted outside the usual course of professional practice. The data reveals that in each year from 2011 through 2014, the pharmacies most closely situated near the defendant's practice in Milford purchased unprecedented quantities of oxycodone and other Schedule II controlled substances. As stated, upon dissolution of and/or limitations to the pharmacies' relationship with the defendant, the pharmacies' ordering numbers dramatically decreased. Accordingly, the ARCOS data meets the threshold relevancy requirements under Rule 401.

III. <u>Admissibility of ARCOS Data as Public Records</u>

The ARCOS data is admissible as an exception for public records under Rule 803(8) of the Federal Rules of Evidence.

In the present case, the ARCOS data is admissible under Rule 803(8)(A) as a "record, report, statement or data compilation ... setting forth the activities of the office or agency," or under Rule 803(8)(B) as a "record, report, statement or data compilation" setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." The Federal Rules of Evidence allow admission of "data compilations, in any form, of public offices or agencies, setting forth…..matters observed pursuant to duty imposed by law as to which matters there was a duty to report." Fed. R. Evid. 803(8); *see, e.g., Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 600-01 (8th Cir. 2005) (Surgeon General reports on smoking admissible as public records even though the data came from work conducted by independent, non-government scientists, since reports were prepared pursuant to a legal obligation to report such data). ARCOS data is also separately admissible records of regularly kept activity under Federal Rule of Evidence 803(8), more fully addressed herein, because it is data the DEA is mandated by law to keep and submit as part of their business practices.[5] As a general proposition, the admissibility of a public record as defined under the Rule is "assumed as a matter of course," unless there are "sufficient negative factors to indicate a lack of trustworthiness, in which case it should not be admitted." *Zeus Enterprises, Inc. v.*

---

[5] 21 U.S.C. § 827(d)(1) (mandated reporting to ARCOS).

*Alphin Aircraft, Inc.*, 190 F.3d 238, 241 (4th Cir. 1999). The burden to establish unreliability rests with the party opposing admission. *Id*. District courts retain significant discretion in determining whether public records and reports ought to be admitted under hearsay exception rules. *See United States v. Hedgepeth*, 418 F.3d 411, 419 (4th Cir. 2005) (*citing United States v. Aramony*, 88 F.3d 1369, 1377 (4th Cir. 1996)).

Under Rule 803(8)(A), the ARCOS data can be properly admitted during trial because it is a public record which sets forth the activities of the DEA. Courts have generally admitted a broad array of records under this Rule. *See Alexander v. Estepp*, 95 F.3d 312, 314 n.2 (4th Cir. 1996) (admitting a list ranking applicants for firefighter positions because it was an activity of the county fire department); *United States v. Hamilton*, No. 87-5596, 1988 WL 9562, *2 (4th Cir. Feb. 3, 1988) (unpublished) (finding DMV records were properly admitted under 803(8)(A)); *United States v. International Union of Elevator Constructors*, 538 F.2d 1012 (3rd Cir. 1976) (finding census data as an admissible public record). This exception has also applied to graphical representations based on DEA statistical data collected during the course of the agency's own activities. *See United States v. Hardin*, 710 F.2d 1231, 1237 (7th Cir. 1983) (finding a graph based on statistics found in a DEA report regarding the average price of cocaine was properly admitted under Rule 803(8)(A) as a record, report or data compilation setting forth an activity of the DEA). ARCOS collects and uses this data to identify those wholesalers of controlled substances to

pharmacies and practitioners who might be diverting controlled substances outside the usual course of professional practice. Thus, the ARCOS data is properly admissible at trial under the public records exception in Rule 803(8)(A).

The ARCOS data and graphs are also admissible under Rule 803(8)(B). This rule allows for admission of public records setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report," except in criminal cases observed by police officers and other law enforcement personnel. Fed. R. Evid. 803(8)(B). The exception specifically applies to observations and evaluations made by law enforcement in connection with an investigation but not to records of routine, non-evaluative matters made in non-adversarial settings. *See United States v. Quezada*, 754 F.2d 1190, 1194 (5th Cir. 1985) (drawing a distinction, for purposes of Rule 803(8)(B), between "reports prepared in a routine, non-adversarial setting, and those resulting from the arguably more subjective endeavor of investigating a crime and evaluating the results of that investigation"). Similar to Rule 803(8)(A) exceptions, courts have found a wide variety of public records exempt from hearsay under 803(8)(B). *See United States v. Weiland*, 420 F.3d 1062, 1074-75 (9th Cir. 2005) (fingerprints and photographs contained in a penitentiary packet "are public records of routine and non-adversarial matters that fall within Rule 803(8)(B)"); *United States v. Johnson*, 722 F.2d 407, 410 (8th Cir. 1983) (holding that a serial number report which the Bureau of Alcohol, Firearms, and Tobacco had a duty to

keep was admissible); *United States v. Torres*, 733 F.2d 449, 455 n.5 (7th Cir. 1984) (finding a Menominee Tribal Roll qualified as a Rule 803(8)(B) exception).

In the present matter, the ARCOS data to be introduced at trial is collected by the DEA pursuant to a duty imposed by law. The CSA requires those wholesalers who manufacture and distribute controlled substances to adhere to certain record keeping and reporting requirements mandated by federal statute and regulation. See 21 U.S.C § 827, 21 C.F.R. § 1304.1, et seq. Wholesalers are required to maintain and submit inventory and sales records to ARCOS. See 21 C.F.R. § 1304. The ARCOS data is therefore collected and kept pursuant to statutory and regulatory authority and not assembled in anticipation of the present trial. Additionally, the ARCOS data is not based on the observations of police officers or law enforcement officials, but is created from reports by manufacturers, distributors and wholesalers. Accordingly, the ARCOS data is admissible as a public records hearsay exception under Rule 803(8)(B).

### IV.  Admissibility of ARCOS Data as Business Records

ARCOS records are admissible as business records.

A record constitutes a "business record" for hearsay purposes if it is made at or near in time by someone with knowledge, if it is kept by an agency in the usual course of its business, and if the records was a regular business practice of that activity. *See* Fed. R. Evid. 803(6). As the Third Circuit has explained, "Records

should therefore be excluded only when the circumstances of the case raise questions sufficient to overcome the presumption of reliability that exists in properly established business records." *See United States v. Onyenso*, 2013 WL 5322686 (3d Cir. 2013); *see also United States v. Casoni*, 950 F.2d 893, 909 (3d Cir.1991) (a presumption of accuracy exists for records properly kept in the ordinary course of business); *United States v. Langford*, 647 F.3d 1309, 1327 (11th Cir. 2012) (reliability is the touchstone of a business records determination), *United States v. Skeddle*, 981 F.Supp. 1069, 1073 (N.D. Ohio. 1997) (records kept as part of a regular routine have special guarantees of trustworthiness, and should be admitted unless circumstances indicate a lack of reliability). "The touchstone of admissibility under [Rule 803(6)] is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence." *United States v. Bueno-Sierra*, 99 F.3d 375, 378 (11th Cir. 1996).

Moreover, the Federal Rules of Evidence allow admission of "data compilations, in any form, of public offices or agencies, setting forth…..matters observed pursuant to duty imposed by law as to which matters there was a duty to report." Fed. R. Evid. 803(8); *see, e.g., Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 600-01 (8th Cir. 2005) (Surgeon General reports on smoking admissible as public records even though the data came from work conducted by independent, non-government scientists, since reports were prepared pursuant to a legal obligation to report such data). As stated above, ARCOS data is separately admissible records of regularly kept activity under Federal Rule of Evidence 803(8), because the data

11

tracks pharmaceutical orders of wholesalers of controlled substances and wholesalers of controlled substances are mandated to keep and submit the data as part of their business practices.

As discussed in the section above, federal law mandates that wholesalers of controlled substances report all orders for controlled substances to the DEA pursuant to the CSA. This data is then maintained in the usual course of business in a database managed by the federal agency in charge of the ARCOS data — here, the Drug Enforcement Administration (DEA). Once reported as required, the data for orders of controlled substances can be found in the business records of the DEA.

The fact that federal regulations mandate this record-keeping does not mean that the records kept pursuant to these regulations are not business records of the pharmacy. *See United States v. Towns*, 718 F.3d 404, 407–10 (5th Cir. 2013) (rejecting the defendant's argument that drug inventory logs are not business records of the pharmacy because the pharmacy only maintained the logs due to federal regulations). Based on this same rationale, the fact that wholesalers of controlled substances are required by federal law to report the same, does not mean that the data maintained in the usual course of the agency's business is not a business record.

Copies of orders for controlled substances, and the data contained on those orders, are business records of wholesalers because they're maintained in the usual course of business. Similarly, it is the usual course of business for the designated federal agency to be the repository for the reported controlled substance orders. The

data regarding an order in the ARCOS database is no less a business record of the agency required to maintain it in the usual course of that agency's business, than is the data on a hard-copy order typically maintained in the usual course of business for a wholesaler of controlled substances.

For these reasons, the ARCOS data obtained during the investigation of this case, and the charts, graphs, and summaries created from this data, are admissible non-hearsay pursuant to Fed. R. Evid. 803(6).

## V. ARCOS Data is Not Barred from Admission by the Confrontation Clause

As noted above, ARCOS data is routinely admitted in trials such as this, and the Government has yet to find a single case in which a court has ever held ARCOS data to be testimonial. If the data is not testimonial, the Confrontation Clause does not affect admissibility.

"A statement is testimonial if 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *United States v. Naranjo*, 634 F.3d 1198, 1213 (11th Cir. 2011) (*citing Crawford v. Washington*, 541 U.S. 31, 68 (2004)). However, not all such statements are necessarily testimonial. To qualify as "testimonial" a statement must have a primary purpose of establishing or proving past events potentially relevant to later criminal prosecution. Here, the mandatory reporting of data is not testimonial, despite the fact that the data might one day be used in criminal proceedings. To the

13

extent that obligatory reporting of bulk data is a "statement" at all, it is done due to legal obligations of all wholesalers of controlled substances. The reporting is not done just for pharmaceutical orders that might be involved in a criminal prosecution one day.

As both the Supreme Court and Third Circuit have explained, business records are not testimonial. *Crawford* at 56; *United States v. Totoro*, 2017 WL 3189216 (3d Cir. 2017); *United States v. Brown*, 534 Fed. Appx. 132 (3d Cir. 2013); *United States v. Merritt*, 2013 WL 124947 (3d Cir. 2013). Accordingly, summary evidence also is not testimonial if the evidence underlying the summary is not testimonial. *See United States v. Benko*, 2016 WL 4705572 (3d Cir. 2016), citing Fed. R. Evid. 803(6) and 1006.

As discussed above, ARCOS data is a business record, and for the reasons set out in the above cases, are categorically not testimonial in nature.

VI. <u>ARCOS Data is Relevant Evidence Not Barred by Rule 403</u>

The proffered evidence is also admissible under Rule 403 because its probative value is not substantially outweighed by a risk of unfair prejudice to the defendant. See Fed. R. Evid. 403; *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009) ("Unfair prejudice does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed [unfairly prejudicial."); *United States v.*

14

*Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987) (Rule 403 is "an extraordinary remedy to be used sparingly").

## VII. CONCLUSION

For all the reasons stated herein, the Government respectfully requests that the Court authorize the admission of ARCOS data.

                                        Respectfully submitted,

                                        DAVID J. FREED
                                        United States Attorney

                         By:   /s/ Michelle L. Olshefski
                              MICHELLE L. OLSHEFSKI
                              Assistant U.S. Attorney

Dated: February 28, 2018

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | NO. 3:16-CR-194 |
| --- | --- | --- |
| | : | |
| v. | : | (JUDGE CAPUTO) |
| | : | |
| FUHAI LI, | : | (ELECTRONICALLY FILED) |
| Defendant | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 28th day of February, 2018, I caused the foregoing "**Government's Brief in Support of Admission of ARCOS Data**" to be served upon Michael Weinstein, Esquire, counsel of record for the defendant, and that Attorney Weinstein is a filing user under the ECF system.

/s/ Michelle L. Olshefski
Michelle L. Olshefski
Assistant U.S. Attorney