UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 3:16-CR-194 |
| | : | |
| v. | : | (JUDGE CAPUTO) |
| | : | |
| FUHAI LI, | : | (ELECTRONICALLY FILED) |
| Defendant | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION IN LIMINE TO EXCLUDE EVIDENCE FROM TRIAL**

I. **INTRODUCTION**

The defendant has moved to exclude evidence relevant to the crimes with which he is charged. The defendant seeks to exclude testimony from any pharmacy or pharmacist not related to specific individuals identified in Counts 1 through 25 of the Superseding Indictment. The defendant seeks to exclude evidence from the Prescription Drug Monitoring Program (PDMP), mandated by law and administered by the Pennsylvania Department of Health, as well as data held by the Automated Reporting and Consolidated Ordering System (ARCOS), also a mandated database pursuant to 21 U.S.C. § 827, 21 C.F.R. § 1304.01, et seq. The defendant claims that the evidence at issue is "tangential and not related to the accusations in the indictment" and, therefore, not relevant. Def. Brief at 2.

The evidence at issue is relevant and essential to proving an element of the charges, that is, that the defendant knowingly issued prescriptions for controlled substances not for a legitimate medical purpose, and outside the usual course of

1

professional practice. The defendant is trying to obstruct the Government from proving its case. His motion should be denied.

## II. BACKGROUND

On October 17, 2017, a federal grand jury returned a 32-count Superseding Indictment charging the defendant, Fuhai Li (the defendant), with various violations of federal law. Counts 1 through 23 charge violations of 21 U.S.C. § 841(a)(1), for the defendant's distribution and dispensing of controlled substances outside the usual course of professional practice and not for a legitimate medical purpose. Count 24 charges a violation of 21 U.S.C. § 841(a)(1), for the defendant's distribution and dispensing of a controlled substance resulting in serious bodily injury and death of a person. Count 25 charges a violation of 21 U.S.C. § 861(f), for the defendant's distribution and dispensing of a controlled substance to a pregnant individual. Counts 26 and 27 charge violations of 21 U.S.C. § 856(a)(1), for the defendant's maintaining locations at 104 Bennett Avenue, Suite 1B, Milford, Pennsylvania, and 200 3rd Street, Milford Pennsylvania, for the purpose of unlawfully distributing controlled substances. Counts 28 and 29 charge violations of 18 U.S.C. § 1957, for the defendant's engaging in monetary transactions in property derived from a specified unlawful activity. Counts 30 through 32 charge violations of 26 U.S.C. § 7201, for the defendant's tax evasion. The 27-page Superseding Indictment, which includes a detailed recitation of facts supporting the charges, also includes a

2

forfeiture allegation seeking forfeiture of various property and U.S. Currency. (*See MDPA 3-cr-16-194, Doc. 47*).[1]

The criminal charges stem from the defendant's medical practice from August 2011 through January 2015. During those years, the defendant treated hundreds of patients who said they were suffering from pain. Notably, he treated the vast majority of these patients by writing prescriptions for Schedule II controlled substances. A jury trial is scheduled to begin on May 1, 2018.

### III. LEGAL DISCUSSION

Under Rule 402 of the Federal Rules of Evidence, relevant evidence is admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R .Evid. 402.

Rule 401 defines relevant evidence as having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. Rule Evid. 401. Although evidence must be relevant to be admissible, Rule 401 does not set a high standard for admissibility. *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 109–10 (3d Cir.1999) (citation omitted). The Third Circuit has explained:

---

[1] The defendant was first charged in a 24-count Indictment returned by a federal grand jury on July 20, 2016. (*See MDPA 3-cr-16-194, Doc. 1*).

> Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case. Because the rule makes evidence relevant if it has any tendency to prove a consequential fact, it follows that evidence is irrelevant only when it has no tendency to prove the fact.

*Blancha v. Raymark Indus.*, 972 F.2d 507, 514 (3d Cir.1992) (emphasis in original) (citations and quotations omitted).

Because the defendant was a physician during the relevant time period and is charged with drug distribution in violation of 21 U.S.C. § 841(a)(1), the Government must prove: (1) that the defendant knowingly and intentionally distributed prescriptions for controlled substances including oxycodone, oxymorphone, hydromorphone, methadone, and fentanyl (as charged in various counts), knowing that each was a controlled drug; (2) that the defendant distributed such drugs outside the usual course of professional practice and without legitimate medical purpose; and (3) that the defendant acted with the intent to distribute those drugs outside the usual course of professional practice and without legitimate medical purposes. The act of prescribing a controlled substance constitutes distribution. *See* 21 U.S.C. §§ 802(8) (11).

Moreover, the defendant is charged beyond those specific patients charged in Counts 1 through 25. In Counts 26 and 27, the defendant is charged with Maintaining a Drug Involved Premises, in violation of 21 U.S.C. §§ 856(a)(1) and 18 U.S.C. § 2. Counts 26 and 27 of the Superseding Indictment charge that the defendant maintained drug involved premises first at his office located at 104

Bennett Avenue, Suite 1B, Milford, Pike County, Pennsylvania, and then at his office located at 200 3rd Street, Milford, Pike County, Pennsylvania. To establish a violation of 21 U.S.C. § 856(a)(1), the Government must prove the following elements beyond a reasonable doubt that: (1) that the defendant knowingly; (2) rented, used, or maintained any place, that is, his medical office(s); (3) for the purpose of distributing a controlled substance.

Though the Government must prove that the drug activity was a significant or important reason why the defendant maintained the place, the Government is not required to prove that the drug activity was the defendant's only purpose in maintaining the place. Therefore, the defendant's treatment of all patients, not only the ones specifically identified in Counts 1 through 25 of the Superseding Indictment, is relevant evidence in addressing the crimes alleged in Counts 26 and 27. As such, any conduct or factor that is relevant to this broader scope of illegal conduct is appropriately admitted as relevant evidence. Thus, the defendant's motion to limit any evidence to only those specifically identified in Counts 1 through 25 should be denied.

Certainly, the representative sample of individual distribution counts charged exemplify the patterns of the defendant's practice that were outside the usual course of professional practice and not for a legitimate medical purpose. But those counts are but a piece of what the Government has alleged in Counts 26 and 27 and what the Government's expert reviewed. The grand jury specifically alleged certain

conduct, while not an exclusive list of what is relevant, that it charged as foundational to the entire Superseding Indictment, including that:

- the defendant prescribed controlled substances in high dosage amounts to certain of his patients at the first appointment, without conducting a meaningful physical examination of such individuals to verify the claimed illness or condition, or after conducting only a limited physical examination, and without reviewing drug screen tests;

- the defendant issued unlawful prescriptions for controlled substances to patients despite indications that such patients were abusing, misusing, and distributing the controlled substances he prescribed. These indications included, but were not limited to, the following: self-reports of addiction concerns, cash payments despite access to health insurance, urine screens positive for illicit street drugs, or negative drug screens which would indicate diversion and patient selling of the drugs;

- the defendant rarely, if ever, referred patients for outside diagnostic testing or physical therapy as an alternative to taking controlled substances, and failed to advise his patients of alternatives to the dangerous and highly addictive medications he continuously prescribed;

- the defendant intentionally ignored "red flags" such as "doctor shopping" by certain of his patients who traveled unreasonably long distances to visit him, and who the defendant knew were being treated by other physicians;

- the defendant continued to prescribe excessive amounts of controlled substances to certain of his patients, knowing that such practice could result in overdoses, dependence, addiction, and, in some cases, death;

- it was often the defendant's practice to choose to begin therapy with the oxycodone 30 mg tablet in the absence of sufficient documentation;

- despite being notified by multiple area pharmacies and individual pharmacists that they would no longer fill prescriptions written by him, the defendant continued to prescribe excessive amounts of controlled substances;

- the alarms and "red flags" noticed and responded to by multiple local pharmacies and individual pharmacists were ignored by the defendant;

- the defendant distributed and dispensed, and caused to be distributed and dispensed, controlled substances to certain of his patients that were not prescribed for a legitimate medical purpose, and not in the usual course of professional practice in one or more of the following manners:

    a.)   inadequate verification of the patient's medical complaint;

    b.)   cursory or no medical examinations by LI;

    c.)   inadequate patient medical history and no follow-up verification;

    d.)   incomplete or inadequate mental or physical examinations;

    e.)   insufficient dialogue with the patients regarding treatment options and risks and benefits of such treatments;

    f.)   treating patients with highly addictive controlled substances while failing to consider other treatment options;

    g.)   failure to refer patients to specialist for treatments;

    h.)   lack of, or inadequate diagnostic testing;

    i.)   increasing the patients' dosages over time unnecessarily;

    j.)   prescribing inappropriate combinations of drugs to patients;

    k.)   allowing patients to suggest or direct the medications to be prescribed;

    l.)   treating a number of patients who resided either out of the state or long distances from his office with prescriptions for highly addictive controlled substances;

    m.)   directing patients to particular pharmacies that were known to fill the prescriptions;

    n.)   prescribing highly addictive controlled substances to patients with vague physical complaints where alternative treatment options would be indicated;

o.) prescribing the maximum dose immediate release formula (30 mg tablets) without a long acting formulation;

p.) failing to assess the risk of abuse by individual patients;

q.) failing to monitor patients' responses to the medication; and

r.) issuing prescriptions for highly addictive controlled substances for an inordinately high percentage of younger adult patients.

(MDPA 3:16-cr-194, Doc. 47.)

The defendant now seeks to obstruct the Government's ability to prove the allegations underlying the charges by claiming that the evidence is not relevant. The defendant's argument is not well founded in law or facts.[2]

a. *The Pharmacists - including Rite Aid, CVS, Walgreens, the Medicine Shop, Walmart, Express Scripts, and Alitons*

Throughout the time charged in the Superseding Indictment, multiple pharmacists either completely refused to fill any prescription written by the defendant for controlled substances, or became extremely selective in filling the defendant's prescriptions. The actions taken by the pharmacists are compelling and relevant for several reasons.

---

[2] While it is not for the Government to advise the defendant on how he should prepare for trial, his limited perspective on what is charged and what is relevant is misguided and does not reflect the more comprehensive illegal conduct with which he is properly charged by the grand jury.

It first must be noted that the actions of shutting off the defendant or selectively refusing to fill his prescriptions for controlled substances were all conveyed to the defendant either in writing or by personal contact by all pharmacists at issue. As such, the defendant was aware that other professionals with corresponding legal responsibilities were concerned about the legitimacy of the defendant's prescribing practices. These professionals will testify about what they factually and personally observed that caused them pause and ultimately led to their decision to reject the defendant's prescriptions for controlled substances.

These pharmacists will testify that they did so for a variety of reasons, for example, the majority of patients presented with the same prescription; the majority of the patients received the maximum dose and a large quantity of a highly addictive and abused controlled substance; many travelled a long distance to get the prescriptions; many of the same family members were receiving the same prescription at the same time; several of the younger patients often travelled together in the same vehicle and all had the same prescription; on more than one occasion, a patient was observed sharing the controlled substance after having it filled at a particular pharmacy; some of the patients appeared to be in no physical distress with no physical limitations but were prescribed the largest available dose and quantity of oxycodone; and many of the pharmacists were dissatisfied with the defendant's response when they called to question the defendant.

The Government does not intend to illicit an "opinion" from the pharmacists about whether defendant's prescriptions were outside the course of professional practice. The Government's expert, Stephen M. Thomas, M.D. will offer that expert opinion. Testimony that a pharmacist took certain actions because they were concerned about the defendant's prescriptions, even if their concerns were based in part on their experience, is not an expert opinion.[3] However, the fact that multiple pharmacists refused to fill the defendant's prescriptions for controlled substances, and having conveyed the same to the defendant, is evidence of the defendant's knowledge that he was acting outside the scope of professional practice.

The testimony from the pharmacists will also corroborate the testimony of individual patients who will testify they often complained to the defendant about pharmacies rejecting their prescriptions. Rather than be alarmed by this, the defendant simply directed those patients to find another pharmacy.

---

[3] To the extent the pharmacists' testimony could be construed as presenting an opinion, the testimony would be at most Rule 701 lay opinions based on their day-to-day business experience as pharmacists. See Fed. R. Evid. 701 advisory committee's note to 2000 amendment (explaining that lay opinion testimony is admissible where based on "the particularized knowledge that the witness has by virtue of his or her position in the business."); *United States v. Polishan*, 336 F.3d 234, 243 (3d Cir. 2003) (lay witness opinion was admissible under Rule 701 because it was "based on the witness's day-to-day knowledge of his or her business."); *Fireman's Fund Ins. Companies v. Alaskan Pride P'ship*, 106 F.3d 1465, 1467 (9th Cir. 1997) (holding that testimony from a claims manager for an underwriter on an insurance policy that the claim at issue in the case was "a legitimate loss" and that he "was very upset" about the denial of coverage was admissible lay opinion).

The testimony from the pharmacists will also corroborate the defendant's former employees who will testify that patients often complained to them about the inability to find a pharmacy that would fill the defendant's prescriptions. The former employees will testify that this information was conveyed to the defendant who, again, responded by directing the patients to find another pharmacy.

Significantly, CVS pharmacists will testify that during a March 2013 interview with the defendant regarding his pattern of prescribing and concerns CVS had about the potential for abuse and diversion, the defendant denied that any of his prescriptions were ever refused. In fact, just two months prior in January of 2013, the Rite Aid Corporation had already shut the defendant off and communicated that cooperate decision to the defendant in writing and verbally.

Janet Hart, a pharmacist and current Director of Government Affairs for Rite Aid Corporation, will testify about Rite Aid's decision to shut off the defendant in January of 2013. Ms. Hart will testify as to facts she observed from her position as the Director of Pharmacy during the relevant time period, as well as from her personal visit to two Rite Aid Pharmacies. While Ms. Hart will testify as to the facts and data underlying Rite Aid's decision, she will not offer an expert opinion as a result of observing such facts.

Evidence of the actions taken by these pharmacists, all of which were conveyed to the defendant, is relevant to the defendant's knowledge that he was acting outside the scope of professional practice. He decision to ignore the warnings is indicative of

his knowledge that he was operating outside the scope of professional practice. The evidence rebuts any assertion that he reasonably believed he was engaged in a proper medical practice and is also evidence of the defendant's willful blindness.[4]

Significantly, and even more to the point of the defendant's knowledge of his own operation occurring outside the scope of a professional practice, is the fact that a pharmacist has a "corresponding responsibility" not to fill an invalid prescription. 21 C.F.R. 1306.04(a).[5] The regulations implementing the Controlled Substance Act

---

[4] The Government may satisfy the knowledge requirement for the charge of prescribing outside the course of professional practice where there is evidence the doctor was willfully blind. *United States v. McIver*, 470 F.3d 550 (4th Cir. 2006). In *McIver*, Fourth Circuit held that the defendant doctor was willfully blind where the doctor prescribed large quantities of controlled substances despite warning signs that the doctor's patients were not using their medications, were seeking appointments specifically to obtain drugs, or were drug addicts. *Id.* 564.

[5] Title 21, Code of Federal Regulations, Section 1306.04(a) provides (emphasis added):

> A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, ***but a corresponding responsibility rests with the pharmacist who fills the prescription***. An order purporting to be a prescription issued not in the usual course of professional treatment or in legitimate and authorized research is not a prescription within the meaning and intent of section 309 of the Act (21 U.S.C. § 829) and the person knowingly filling such a purported prescription, as well as the person issuing it,

expressly place a duty on pharmacists not to knowingly fill prescriptions issued outside the usual course of medical practice. *United States v. Lovern*, 590 F.3d 1095, 1102 (10th Cir. 2009); *see also United States v. Hughes*, 895 F.2d 1135, 1143 n.11 (6th Cir. 1990) (rejecting pharmacist's argument that he is free to fill any facially "valid" prescription issued by a licensed doctor because of the substantial evidence in that case that he knew the prescriptions were not issued in the usual course of medical practice); *United States v. Irwin*, 661 F.2d 1063, 1069 (5th Cir. 1981) ("[I]f an order purporting to be a prescription is not a prescription despite its appearance and, if the pharmacist knows that it was not issued in the usual course of professional treatment, both the person issuing the ostensible prescription and the person who knowingly fills it shall be subject to the penalties [of § 841(a).]"); *United States v. Hayes*, 595 F.2d 258, 261 (5th Cir. 1979) (holding a pharmacist has "the responsibility not to fill an order that purports to be a prescription but is not a prescription within the meaning of the statute because he knows that the issuing practitioner issued it outside the scope of medical practice").

Thus, while the responsibility for the proper prescribing and dispensing of controlled substances rests initially with the physician, *Hayes*, 595 F.2d at 261, the regulation imposes a "corresponding responsibility" upon the pharmacist who fills the

---

shall be subject to the penalties provided for violations of
the provisions of law relating to controlled substances.

prescription. 21 C.F.R. § 1306.04(a). When a pharmacist fills a prescription that he has reason to believe is not a "valid prescription," as that term is defined in the regulations, he is subject to the penalties of § 841. *Id.*

Because the Government must prove the drugs were not distributed "in the usual course of professional practice" or "for a legitimate medical purpose," the above evidence of actions taken by pharmacists who share a corresponding legal responsibility with the defendant, and the defendant's knowledge of such actions, is quite relevant and admissible. It speaks to the defendant's state of mind and knowledge with respect to his patients and the prescriptions he was writing. *See United States v. Volkman*, 797 F.3d 377, 391 (6th Cir. 2015) and *United States v. Steele*, 178 F.3d 1230, 1236 (11th Cir. 1999) (testimony of pharmacists admitted to show defendant's knowledge and state of mind); *United States v. Lasher*, 661 F. App'x 25 (2d Cir. 2016) (pharmacist testimony admitted regarding customers who presented at defendant's pharmacy in cars with out-of-state license plates and who appeared visibly intoxicated or unkempt appearance was admissible as evidence of the defendant's knowledge and intent, as well as absence of mistake, in improperly filling prescriptions issued over the Internet).

Furthermore, the evidence is relevant and admissible not only for the individuals specifically charged in Counts 1 through 25, but also relevant and admissible to the charges filed in Counts 26 and 27 of the Superseding Indictment. The grand jury returned charges specifically alleging that the defendant was

14

essentially operating a drug house under the guise of a medical practice. The above evidence is relevant and admissible to the defendant's knowledge on those counts as well.

This testimony is not hearsay, nor is its probative value substantially outweighed by any Rule 403 consideration. To the extent that it could be construed as being subject to Rule 404(b), it would still be admissible because this testimony is not being used to establish the defendant's character in order to argue that the defendant acted in accordance therewith. Instead, the testimony is being offered to corroborate the factual testimony of the defendant's patients and former employees who will testify in this case regarding issues that are relevant to whether the defendant was acting outside the usual course of professional practice when he wrote the prescriptions, as well as the defendant's state of mind.

b. *PDMP and ARCOS Data*

On February 21, 2018, the Government filed a motion in limine and supporting brief regarding the relevance and admissibility of the Prescription Drug Monitoring Program data. *See* 3:16-cr-194, Docs. 84 and 85. On February 28, 2018, the Government filed a motion in limine and supporting brief regarding the relevance and admissibility of ARCOS data. *See* 3:16-cr-194, Docs. 88 and 89. Regarding the defendant's attempt to exclude PDMP data and ARCOS data in the instant motion, the Government hereby incorporates by reference its motions in limine as identified above.

IV. <u>CONCLUSION</u>

Based on the facts, case law, and legal analysis detailed above, the Government respectfully requests that Court deny the defendant's motion to exclude relevant and admissible evidence.

                            Respectfully submitted,

                            DAVID J. FREED
                            United States Attorney

By:   <u>/s/ Michelle L. Olshefski</u>
      MICHELLE L. OLSHEFSKI
      Assistant U.S. Attorney

Dated: March 19, 2018

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | NO. 3:16-CR-194 |
| | : | |
| v. | : | (JUDGE CAPUTO) |
| | : | |
| FUHAI LI, | : | (ELECTRONICALLY FILED) |
| Defendant | : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 19th day of March, 2018, I caused the foregoing "**Government's Response to Defendant's Motion in Limine to Exclude Evidence**" to be served upon defense counsel Michael Weinstein and William Ruzzo, counsel of record for the defendant, and that defense counsel are filing users under the ECF system.

/s/ Michelle L. Olshefski
Michelle L. Olshefski
Assistant U.S. Attorney