FILED
SCRANTON

FEB 10 2021

PER _____ DEPUTY CLERK

**MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

| United States District Court | District Middle District of Pennsylvania |
|---|---|
| Name (under which you were convicted): Fuhai Li | Docket or Case No.: 3:16-CR-194 |
| Place of Confinement: FCI McKean, Bradford, PA | Prisoner No.: 75356-067 |

| UNITED STATES OF AMERICA | Movant (include name under which convicted) |
|---|---|
| v. | Fuhai Li |

## MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: United States District Court for the Middle District of Pennsylvania, Wilkes-Barre/Scranton, Pennsylvania.

    (b) Criminal docket or case number (if you know): 3:16-CR-194

2. (a) Date of the judgment of conviction (if you know): June 4, 2018

    (b) Date of sentencing: April 3, 2019

3. Length of sentence: 330 months

4. Nature of crime (all counts): Counts 1 through 23 for knowingly dispensing a controlled substance without a legitimate medical purpose in violation of 21 U.S.C. §841 (a)(1), Count 24 for knowingly dispensing a controlled substance without a legitimate medical purpose resulting in serious bodily injury and death of a person in violation of 21 U.S.C. §841 (a)(1), Count 25 for knowingly dispensing a controlled substance without a legitimate medical purpose to a pregnant individual in violation of 21 U.S.C. §861(f), Counts 26 and 27 for maintaining drug premises in violation of 21 U.S.C. §856 (a)(1), Counts 28 and 29 for monetary transactions in violation of 18 U.S.C. §1957, and counts 30 through 32 for tax evasion in violation of 26 U.S.C. § 7201.

5. (a) What was your plea? (Check one)

    (1) Not guilty ☒     (2) Guilty ☐     (3) Nolo contendere (no contest) ☐

    (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to? _____

    _____

    _____

    _____

    _____

6. If you went to trial, what kind of trial did you have? (Check one)     Jury ☒     Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ☒     No ☐

8. Did you appeal from the judgment of conviction?     Yes ☒     No ☐

9. If you did appeal, answer the following:

    (a) Name of court: United States Court of Appeals for the Third Circuit

    (b) Docket or case number (if you know): 19-1875

    (c) Result: Judgment from the district court was affirmed.

    (d) Date of result (if you know): July 9, 2020

    (e) Citation to the case (if you know): Unknown

    (f) Grounds raised: (1). The verdict on count 24 was not supported by the evidence. (2). The court should have excluded the improper 404(B) evidence, or at least provided an appropriate limiting instruction and jury charge. (3). The lower court erred in admitting Dr. Thomas' testimony, because his methodology was unreliable and it was not helpful to the jury. (4). The extensive use of improper testimony designed to engender sympathy requires a new trial be ordered. (5). The court should have charged the jury on good faith. (6). The court should have held a fact hearing to determine the amount of forfeiture.

    (g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐     No ☒ *

        If "Yes," answer the following:

        (1) Docket or case number (if you know): _____

        (2) Result: _____

        (3) Date of result (if you know): _____

        (4) Citation to the case (if you know): _____

        (5) Grounds raised: * Special note: Appeal counsel Mr. Bahuriak and his office informed Movant L I that a petition for certiorari in the United States Supreme Court would be filed by October 7, 2020. Movant L I requested a copy of the filed petition for certiorari on December 21, 2020 (see attachment-1), but received no response. On Jan. 4, 2021, Movant L I requested the copy again (see attachment-2) from Mr. Bahuriak due to the need of this legal proceeding, and also indicated if no answer was received by Jan. 14, 2021, it would mean no petition for certiorari was filed. Movant L I had not received any response since then.

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

    Yes ☐     No ☒

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court: _____

        (2) Docket or case number (if you know): _____

        (3) Date of filing (if you know): _____

        (4) Nature of the proceeding: _____

        (5) Grounds raised: _____

_____
_____
_____
_____
_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

     Yes ❑  No ❑

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____

(2) Docket or case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised: _____
_____
_____
_____
_____
_____
_____
_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

     Yes ❑  No ❑

(7) Result: _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:     Yes ❑  No ❑

(2) Second petition:     Yes ❑  No ❑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

_____
_____
_____

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

**GROUND ONE:** Conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

Please see Memorandum of Law in Support of Motion to Vacate Conviction and Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. §2255 at Pages 13 through 65. Briefly, there was no substantial basis for concluding that Probable cause existed in Agent Hischar's affidavit in support of an application for a search and seizure warrant. Consequently, all evidence from LI's medical office, two homes and two banks (PNC bank and Wells Fargo bank), including all patients' medical records, carbon copies of prescriptions written by LI, patients' billing records, cash receipt books, Quickbook records, financial transaction records, U.S. Currency and all bank accounts etc., was unconstitutionally seized. Further LI's conviction was primarily based on these unconstitutionally seized evidence as shown in the trial records from May 3, 2018 to June 4, 2018.

(b) **Direct Appeal of Ground One:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐ No ☒

    (2) If you did not raise this issue in your direct appeal, explain why: The record was not fully developed based on the appeal counsel.

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐ No ☒

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:_____

    Name and location of the court where the motion or petition was filed:_____

    Docket or case number (if you know):_____

    Date of the court's decision:_____

    Result (attach a copy of the court's opinion or order, if available):_____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐ No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑  No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑  No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____

**GROUND TWO:** Denial of effective assistance of counsel.

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

Please See Memorandum Of Law in Support Of Motion to Vacate Conviction and Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 at pages 65 through 88. Briefly, counsel failed to request exculpatory evidence from the PA State's investigation, failed to prepare and submit numerous motions and briefs including a supporting brief for Motion to Suppress (Doc#62), erroneously conceded the relevance and fit prong of the Daubert Criteria, failed to cross-examine Dr. Thomas on a patient-by-patient basis in all 35 patients' records, failed to introduce evidence from LI's expert to counter Dr. Thomas' testimony in 31 of the 35 patients' records, failed to introduce evidence from LI to counter patients' testimony in 16 of the 20 patients, failed to defend LI in the death count, and failed to disclose actual conflict of interest.

(b) **Direct Appeal of Ground Two:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ❑  No ☒

    (2) If you did not raise this issue in your direct appeal, explain why: The record was not fully developed and ineffective assistance of counsel claim should be subject to collateral attack based on the appeal counsel.

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ❑  No ☒

    (2) If your answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:_____

    Name and location of the court where the motion or petition was filed:_____

    _____

    Docket or case number (if you know):_____

    Date of the court's decision:_____

    Result (attach a copy of the court's opinion or order, if available):_____

    _____

    _____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ❑  No ❑

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ❑  No ❑

    (5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

        Yes ❑  No ❑

    (6) If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:_____

    _____

    Docket or case number (if you know):_____

    Date of the court's decision:_____

    Result (attach a copy of the court's opinion or order, if available):_____

    _____

    _____

    (7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

    issue: _____

    _____

    _____

    _____

    _____

**GROUND THREE:** _____N / A_____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**(b) Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑   No ❑

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑   No ❑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ❑   No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ❑   No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ❑   No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____

_____

**GROUND FOUR:** ___N/A_____

_____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(b) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ❑ No ❑

(2) If you did not raise this issue in your direct appeal, explain why: _____

_____

_____

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ❑ No ❑

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition:_____

Name and location of the court where the motion or petition was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ❑  No ❑

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ❑  No ❑

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ❑  No ❑

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:_____

_____

Docket or case number (if you know):_____

Date of the court's decision:_____

Result (attach a copy of the court's opinion or order, if available):_____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this

issue: _____

_____

_____

_____

_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which

    ground or grounds have not been presented, and state your reasons for not presenting them: Both ground

    one and ground two have not been previously presented in federal court, because this is

    movant LI's first Motion Under 28 U.S.C. § 2255.

_____

_____

_____

_____

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the

    judgment you are challenging? Yes ❑  No ☒

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the

    issues raised. _____

_____

_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: Michael E. Weinstein, Esq., 410 Broad Street, Milford, PA 18337; William Ruzzo, Esq. 590 Rutter Avenue, Kingston, PA 18704.

(b) At arraignment and plea: Michael E. Weinstein, Esq., 410 Broad Street, Milford, PA 18337; William Ruzzo, Esq., 590 Rutter Avenue, Kingston, PA 18704.

(c) At trial: Michael E. Weinstein, Esq., 410 Broad Street, Milford, PA 18337; William Ruzzo, Esq., 590 Rutter Avenue, Kingston, PA 18704.

(d) At sentencing: David S. Bahuriak, Esq., 518 South 3rd Street, Philadelphia, PA 19147; Michael E. Weinstein, Esq., 410 Broad Street, Milford, PA 18337.

(e) On appeal: David S. Bahuriak, Esq., 518 South 3rd Street, Philadelphia, PA 19147.

(f) In any post-conviction proceeding: N/A

(g) On appeal from any ruling against you in a post-conviction proceeding: N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? Yes ☒ No ☐

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? Yes ☐ No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _____

(b) Give the date the other sentence was imposed: _____

(c) Give the length of the other sentence: _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future? Yes ☐ No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

N/A

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief: his conviction and sentence should be vacated, he should be discharged promptly from federal custody, and his superseding indictment should be dismissed, or alternatively a new trial should be granted.

or any other relief to which movant may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion Under 28 U.S.C. § 2255 was placed in the prison mailing system on Feb. 2, 2021 _____ (month, date, year).

Executed (signed) on Feb. 2, 2021 _____ (date).

_____

Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion. _____
_____
_____

* * * * *

M: 75356067
Richburg, Ryan
JECT: Certri
E: 12/21/2020 10:08:36 AM

Dear Ryan,

Would like to know if the supreme court certri was filed or not. If it was filed, please send me the copy. But if it was not filed, please inform me so, as more than two months have been passed.

Happy holiday. Say hello to Rakuel.

Thanks,

Attachment-2 (motion § 2255)

---

FROM: 75356067
TO: Bahuriak, David; Hu, Hong; Richburg, Ryan
SUBJECT: Certiorari
DATE: 01/04/2021 01:27:24 PM

Date: Jan. 4, 2021

To: David Bahuriak, Esq.

Dear Dave;

I sent an email to your office manager Ryan Richburg on December 21, 2020 asking about the supreme court Certiorari. So far, I have received no response.

I am now asking you to inform me whether the Certiorari was filed or not? Because I need this important information for my legal proceeding. If it was filed, please send me a copy ASAP. If it was not filed, please inform me so.

If I do not hear from you by next Friday (Jan. 14, 2021), it means that you or your associate did not file it, and I will so state in my legal proceeding.

Thank you for your attention.

Sincerely yours,

Fuhai LI
FCI McKean

Fuhai Li, 75356-067
Federal Correctional Institution McKean
P.O. Box 8000
Bradford, PA 16701

RECEIVED
SCRANTON
FEB 10 2021
PER
DEPUTY CLERK

Legal Mail

<75356-067>
Clerk Of Courthouse
PO BOX 1148
Scranton, PA 18501-1148
United States
United States District Court
For Middle District of Pennsylvania

UNITED STATES POSTAGE
U.S. OFFICIAL MAIL
PENALTY FOR PRIVATE USE $300
PITNEY BOWES
$ 000.000
02 1P
0001126400     FEB 03 2021
MAILED FROM ZIP CODE 16738

CERTIFIED MAIL
PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7018 1140 0000 0950 9490

# APPENDIX

## Exhibit 1: Application, search and seizure warrant, and affidavit

FILED
SCRANTON

FEB 10 2021

PER _____
DEPUTY CLERK



# UNITED STATES DISTRICT COURT

## for the

MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>NEUROLOGY & PAIN MANAGEMENT CENTER<br>200 THIRD STREET<br>MILFORD, PA 18337 | )<br>)<br>)<br>)<br>)<br>) | Case No. 3:15mc47 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT 'A' FOR DESCRIPTION AND PHOTOGRAPH

located in the MIDDLE _____ District of PENNSYLVANIA _____, there is now concealed *(identify the person or describe the property to be seized):*

SEE ATTACHMENT 'B'

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| TITLE 21, SEC. 841(a)(1) | KNOWINGLY DISTRIBUTING A CONTROLLED SUBSTANCE<br>WITHOUT A LEGITIMATE MEDICAL PURPOSE |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT OF PROBABLE CAUSE

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

WILLIAM E. DAVIS / DEA SPECIAL AGENT
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 1-22-15

_____
*Judge's signature*

City and state: Wilkes-Barre PA

Karoline Mehalchick, US Magistrate Judge
*Printed name and title*

E1



# UNITED STATES DISTRICT COURT
## for the
### MIDDLE DISTRICT OF PENNSYLVANIA

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name or address)* )
NEUROLOGY & PAIN MANAGEMENT CENTER )
200 THIRD STREET )
MILFORD, PA 18337 )

Case No. 3:15mc47

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the    MIDDLE    District of PENNSYLVANIA

*(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT 'A' AND PHOTOGRAPH

I find that the affidavit(s), or any recorded testimony, establish ~~probable cause to search and seize~~ the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*

SEE ATTACHMENT 'B'

**YOU ARE COMMANDED** to execute this warrant on or before   2-5-15   *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10 p.m.   ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to

_____
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized (check the appropriate box)

☐ for _____ days *(not to exceed 30)*    ☐ until, the facts justifying, the later specific date of _____

Date and time issued:  1-22-15  10:09am          *Jmu lln*
                                                  *Judge's signature*

City and state:   Wilkes-Barre PA          Karoline Mehalchick, US Magistrate Judge
                                           *Printed name and title*

E2



# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
## SEARCH AND SEIZURE WARRANT

I, Diversion Investigator James J. Hischar, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AFFIANT BACKGROUND

1.    I make this affidavit in support of an application for a search warrant for medical records in paper and/or electronic form, evidence of illegal prescribing, proceeds of unlawful activities including U.S. currency that is stored at premises owned, leased, maintained, or operated by Doctor Fuhai LI, a medical doctor who practices medicine at 200 Third Street, Milford, PA 18337 and resides at 4005 Milford Landing Drive, Milford, PA and 146 Rising Meadow Way, East Stroudsburg, PA. The information to be searched for is described in the following paragraphs and in attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. 2703(a), 2703(b)(1)(a) and 2703(c)(1)(a) .

2.    I am a Diversion Investigator with the United States Drug Enforcement Administration ("DEA") assigned to an office in Scranton, PA. As a Diversion Investigator with the DEA, my responsibilities include monitoring the distribution of prescription and other controlled substances from the manufacturer or importer to the consumer, and prescription drug diversion, in violation of the Controlled Substances Act, Title 21, United States Code, Sections 801-91. I have been a Diversion Investigator with DEA since October 2010. I received 13 weeks of specialized training at DEA's training academy in Quantico, VA, where I was trained in laws relating to controlled substances, their scheduling, manufacturing, and distribution. I have attended training relating to the diversion of controlled substances by physicians, pharmacists and others who, based on their profession, have access to controlled substances. Prior to being a Diversion Investigator, I was employed by the Commonwealth of Pennsylvania as a State Trooper. I became a State Trooper in 1985, and was assigned to patrol duties. From April 1990 until July 2010, I was assigned to various State Police Narcotic Units, where I conducted undercover investigations of street sales of narcotics, as well as conducting complex narcotic trafficking investigations which included the use of wiretaps. I was assigned to a DEA Task Force in Scranton Pennsylvania from January 2004 until July 2010. In all of these years, I have conducted or participated in a large number of narcotics investigations and search warrants.

1

E3

3.    The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, agencies and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.    Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. 841(a)(1) have been committed by Fuhai LI. There is also probable cause to search the premises for information described in attachment A for evidence of these crimes as described in attachment B.

## PROBABLE CAUSE

5.    On July 13, 2012, the Scranton Resident Office of the Drug Enforcement Administration (DEA) received an anonymous letter from an addiction treatment facility. The letter indicates that the facility employs eight counselors and treats 100 clients per week. Staff members at the facility receive many reports regarding doctors who prescribe excessive amounts of opiates and that the facility has never reported any of this information in the past. The writer states he/she feels the company would be negligent if they did not report the most blatant issues with Dr. Fuhai LI. The staff at the facility has received many stories of teenagers and young adults driving 45 minutes to see Dr. LI. The writer states staff members have over 30 reports of Dr. LI prescribing enough opiates to kill a person. Clients are reporting that they are getting medications without a medical reason and pay cash for their visit rather than using insurance. Clients report that Dr. LI issues several prescriptions at once, including post-dated prescriptions and tell Dr. LI they lost their prescription and are given a new one without being seen by the doctor. The writer claims Dr. LI prescribed opiate medication to a seventeen year old patient who overdosed. According to the letter, several clients have reported selling their prescriptions for $1,500.00 to $3,000.00 on the street.

6.    The Scranton Resident Office of the DEA received at least forty copies of prescriptions written by Dr. Fuhai LI over the past three years from Walgreens pharmacies located throughout the DEA Scranton area of responsibility. According to Walgreens policy, pharmacists are required to notify the DEA when a pharmacist refuses to fill a prescription for failing to meet Walgreens "good faith" dispensing policy or other suspicious circumstances. Federal regulations, 21 CFR Sec. 1306.04(a) states in part: "The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner, but a corresponding responsibility rests with the pharmacist who fills the prescription". A pharmacist is a doctor of pharmacy and recognized as experts in their professional field.

2

E4

7.    Your affiant was aware of investigations being conducted by the Pennsylvania Office of Attorney General (PA OAG), Pike County District Attorney's Office and the Pennsylvania Department of State Bureau of Licensing regarding Dr. LI's prescribing of excessive amounts of Schedule 2 narcotic controlled substances, primarily oxycodone. As the Walgreen complaints continued to mount, your affiant made a case status inquiry of the aforementioned enforcement agencies. The PA OAG had closed their investigation, the Pike County DA's Office requested the investigation be turned over to DEA and provided a source of information (SOI), the PA State Department Bureau of Licensing did not believe they had enough information to take administrative action against LI's medical license at this time.

8.    On or about March 5, 2013, Diversion Investigator James Hischar (affiant) initiated an investigation into the illegal prescribing of controlled substance medication by Doctor Fuhai LI. LI is registered with the DEA as a practitioner, authorized to handle controlled substances in Schedules 2 through 5. This registration, although authorizing LI to handle such controlled substances, requires that it be done in accordance with the regulations and statutes set forth in 21 CFR 1306.04(a) and 21 U.S.C. 841(a)(1) which reads in part; "A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice". As outlined in this affidavit, Dr. Fuhai LI appears to be prescribing excessive amounts of oxycodone absent legitimate medical purpose and continues to follow the same prescribing patterns according to the most recent information, surveillance and data received in November 2014.

9.    Your affiant requested a Schedule 2 prescription monitoring report (PMP) from the Pennsylvania Office of Attorney General. A prescription monitoring report contains prescription data for all Schedule 2 controlled substances dispensed by pharmacies in the state of Pennsylvania. Pharmacies are required by state statute to report the patients name, name and strength of Schedule 2 controlled substance dispensed, amount dispensed, number of days supplied, prescribing physicians name and DEA number and the dispensing pharmacy's name and DEA number. On March 5, 2013, the report was received and revealed Dr. LI wrote 16,584 prescriptions for Schedule 2 controlled substances totaling 1,991,857 dosages units in a 26 month period between the dates of January 1, 2011 and March 5, 2013. The large majority of the prescriptions were for Oxycodone. A few minor reporting errors were discovered such as the reporting of Hydrocodone and Alprazolam which are Schedule 3 and Schedule 4 drugs respectively.[1] None the less, based on your affiants training and experience, the prescriptions for oxycodone appeared to be grossly excessive. As detailed in the paragraphs that follow; a national mail order pharmacy compared Dr. LI's controlled substance prescribing habits to

[1] The accuracy of the PMP reports is not verified and based purely on data provided by each individual pharmacy. However, the affiant's analysis of this data was found to be consistent with the pharmacy reviews of their original records.

other prescribers that specialize in neurology, both state wide and nationally. This mail order pharmacy ranked Dr. LI #5 nationally for the highest count of prescribed Schedule 2 medications and #2 in Pennsylvania.

10.     On March 5, 2013, your affiant along with SA William Davis and DI Louis Callavini interviewed three pharmacists at local pharmacies in Milford, PA.

(a) Brain Barland, Pharmacist at Rite-Aid store #3689, 100 West Harford Street, Milford, PA 18337. Barland advised that Dr. LI writes a lot of high dose narcotic prescriptions and that he received a policy letter from the Rite-Aid's corporate office about 1 month ago which advises all Rite-Aid pharmacies not to fill narcotic prescriptions written by Dr. LI. Your affiant checked Rite-Aid Milford, PA oxycodone orders through a DEA database known as the Automated Reporting and Consolidated Ordering System (ARCOS). Distributors of controlled substances are required to report all sales of Schedule 2 controlled substances and Schedule 3 narcotic controlled substances to ARCOS based on a monthly or quarterly schedule. According to distributor reports in ARCOS, Rite-Aid of Milford, PA received the following:

- 237,340 dosages of oxycodone in 2010
- 402,300 dosages of oxycodone in 2011
- 331,800 dosages of oxycodone in 2012
- 167,700 dosages of oxycodone in 2013
- 148,000 dosages of oxycodone through December 14, 2014

(b) Andrew Dickson, Pharmacist and owner of the Medicine Shop 105 Wheatfield Drive, Suite 2, Milford, PA 18337. Dickson stated Dr. LI opened his practice about two years ago and oxycodone sales spiked. Dickson said he called LI about two weeks ago to question his prescribing of narcotics and LI told him he does everything right and his books are open to DEA. Dickson said he has been refusing to fill prescriptions for LI's new patients, young patients, patients from the Stroudsburg area and out of state patients. Dickson added that LI recently started writing prescriptions for a lot of fentanyl patches. Your affiant checked The Medicine Shop of Milford, PA oxycodone orders through ARCOS and found the following:

- 165,320 dosages of oxycodone in 2010

- 271,600 dosages of oxycodone in 2011

- 322,900 dosages of oxycodone in 2012

- 190,000 dosages of oxycodone in 2013

- 145,000 dosages of oxycodone through December 14, 2014

(c) Sophia Majesky, Pharmacist at Wal-Mart 220 Route 6 and 209, Milford, PA 18337. Majesky stated Dr. LI writes a lot of oxycodone 30mg which caused Wal-Mart sales of that medication to spike. The spike in oxycodone 30mg sales triggered a review of LI's prescribing habits by the Wal-Mart regional manager, Kevin Chandler. According to Majesky, Chandler instructed Wal-Mart pharmacists to only fill prescriptions for known patients who have a family doctor that is aware of the narcotics being prescribed by LI. Chandler also instructed pharmacy staff to keep a log of prescriptions they refuse to fill. Your affiant checked Wal-Mart of Milford, PA oxycodone orders through ARCOS and found the following:

- 205,600 dosages of oxycodone in 2010
- 279,900 dosages of oxycodone in 2011
- 324,400 dosages of oxycodone in 2012
- 120,500 dosages of oxycodone in 2013
- 210,900 dosages of oxycodone through December 14, 2014

By reviewing the ARCOS data, it was apparent these pharmacists recognized a problem with Dr. LI's prescribing of oxycodone. The noted decrease in oxycodone orders reflects the corrective action taken by the pharmacies .

11.     In comparison, on November 14, 2014, your affiant received data from DEA Headquarters which records controlled substance orders placed electronically by Aliton's Pharmacy. The system is known as the Controlled Substance Ordering System (CSOS). For orders placed through CSOS, distributors of controlled substances must report the same sales within 2 days in addition to ARCOS reporting. CSOS was queried after an ARCOS check revealed only 13,800 oxycodone were ordered in 2013. Your affiant found that the distributor supplying Aliton's Pharmacy was cited by DEA for failing to report to ARCOS. Your affiant compiled data from both systems relative to sale of oxycodone to Aliton's Pharmacy and found the following:

- Total CSOS Transactions (02/15/2013 thru 09/26/2014): **1,200**

- **02/15/2013 thru 12/31/2013**

  Total CSOS transactions: **659**

  Total ARCOS transactions: **19**

  Total quantity of oxycodone ordered: **443,300**

  Total quantity of oxycodone 30mg or higher: **321,200**

72.4% of oxycodone orders were for strengths of 30mg or higher

- 01/02/2014 thru 09/26/2014

Total CSOS transactions: **541**

Total ARCOS transactions: **108**

Total quantity of oxycodone ordered: **432,100**

Total quantity of oxycodone 30mg or higher ordered: **302,500**
70.0% of oxycodone orders were for strengths of 30mg or higher

12.     Investigators met with a confidential source of information (herein CS #1) who has training and experience in the medical field and was formerly employed by Dr. LI. CS #1 had contacted members of the Pike County District Attorney's Office to report Dr. LI for prescribing high amounts of narcotics outside the scope of his medical profession. CS #1 stated that Dr. LI prescribes heavy doses of narcotics, primarily oxycodone 30mg, 180-240 tabs, to nearly every patient in his practice. CS #1 stated LI charges $300 for the first visit and $135 for subsequent office visits unless a drug screen is ordered then the cost is $185. CS #1 stated despite patients testing positive for illicit drugs such as heroin and cocaine, Dr. LI continues to prescribe them narcotic pain medication. In addition, LI is made aware of patients who are "doctor shopping" (doctor shopping is when a patient visits several doctors to obtain multiple prescriptions for the same medication, usually an abused narcotic, without the knowledge of each doctor), patients who are diverting their medication, calls from concerned family members, or patients who are arrested for violations of the controlled substance act. Despite being made aware of these facts, LI continues to prescribe narcotics to those patients. The CS believes there are at least 6 patients that have died from overdoses of medication prescribed by LI. CS #1 suspects Dr. LI may have edited the computerized patient files of patients who died on August 29, 2012, between 9 and 11 PM. CS #1 stated medical records are kept in electronic format on a server located in the office and that Dr. LI has a laptop computer that can access the server remotely, enabling LI to work from home. CS #1 said it is common for Dr. LI to work from home using his laptop but the medical record software records the date and time any medical record is edited.

13.     CS #1 stated patients come from areas near Allentown/Bethlehem, Stroudsburg, King of Prussia, Philadelphia and Scranton. In addition, Dr. LI sees patients from New York (including NYC), New Jersey (including Southern NJ), Maryland, Connecticut and North Carolina, despite there being many similar doctors in those areas. Your affiant reviewed data contained in the PMP report and found this information to be accurate.

14.    CS #1 stated he/she is aware of one patient who told LI he felt significantly better after taking oxycodone 15mg.  LI added a prescription for 8mg of dilaudid (a powerful narcotic drug) in addition to the oxycodone 15mg, despite the patient reporting complete relief of his original complaint.  CS #1 also stated Dr. LI prescribed Tylenol with Codeine to an 11 year old boy for headaches.  CS #1 did not agree with prescribing codeine to a child when there are many other non-narcotic options available.  CS #1 stated LI employs an office manager, Sandy Leonard, who has two daughters, Kendra Hanor and Janelle Rude-Burke that are addicted to heroin and are currently prescribed oxycodone by LI.  Your affiant reviewed the PMP reports and found that Kendra Hanor was being prescribed oxycodone by LI between the dates of September 12, 2011 and October 2, 2013 while Janelle Rude and Janelle Burke, both having the same date of birth and believed to be the same person, was being prescribed oxycodone by LI between May 19, 2011 and July 8, 2014.

15.    CS #1 stated many of the area pharmacies including Blakeslee Pharmacy, CVS, Rite-Aid, Price Chopper and Walgreens have refused to fill prescriptions written by LI or limited what patients could get.  CS #1 stated Dr. LI is now referring patients to Aliton's Pharmacy in Milford. Your affiant reviewed the PMP report for Schedule 2 prescriptions filled by Aliton's Pharmacy during the period January 1, 2013 to November 6, 2014.  Although the PMP report was requested for a 22 month period, it was noted that the report was missing 10 months of data. As previously stated in paragraph 9 of this affidavit, pharmacies are required to report all sales of Schedule 2 controlled substances to the Pennsylvania State Attorney General's office for inclusion in the prescription monitoring program.

According to the data received covering a 12 month period between January 1, 2013 and November 6, 2014:

(a)  Aliton's filled 5,383 prescriptions for Schedule 2 controlled substances.  4,055 or 75.3% were for oxycodone products.

(b)  Of the 5,383 Schedule 2 prescriptions filled by Aliton's; 4,038 or 75 % were written by Dr. LI.

(c)  Of the 4,038 Schedule 2 prescriptions written by LI; 3,108 or 76.9% were for oxycodone products.

(d)  The 5,383 Schedule 2 prescriptions filled by Aliton's contained orders for 508,573 dosage units of which 444,369 or 87.3% were prescribed by LI.

(e)  Of the 444,369 Schedule 2 dosage units prescribed by LI; 385,259 or 86.6% were oxycodone products.