Fuhai Li, Pro Se
Reg # 75356-067
FCI Mckean
P.O. Box 8000
Bradford, PA 16701

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

United States of America

v.     No.: 3:16-CR-194     (Judge: M. Brann)

Fuhai Li,

Movant

FILED SCRANTON
JUN 10 2021
PER /s/ Ama
DEPUTY CLERK

## Reply Brief to the Government's Memorandum of Law in Opposition to Movant's 28 U.S.C § 2255 Motion

AND NOW COMES Fuhai Li, Movant by Pro Se, respectfully submits this Reply Brief to the Government's Memorandum of Law in Opposition to Movant's 28 U.S.C. § 2255 Motion, and avers the following points.

### POINT ONE: The Government's Statement of Facts is replete with voluminous false statements and statements irrelevant to the two grounds in LI's 28 U.S.C. § 2255 motion.

It is worthwhile to point out that the Government continues to at least mislead, if not deceive, this Honorable Court. When the Government filed its motion for leave to exceed page or word limits, it stated "[g]ood Cause for this motion exists as the Government must address multiple arguments in its brief." See Doc # 268 at 1. However,

the Government in its brief utilized 34 pages describing Background and Statement of Facts. Government Brief (Gov. Br.) at 1-34, yet the arguments contain less than 18 pages. Id at 35-52. Moreover, the Government did not even address several claims raised in LI's §2255 motion, such as counsel's failures in direct examination and cross-examination, actual conflict of interest, and prosecutorial misconduct, infra, despite it so stating above. Obviously, majority of the so-called facts are irrelevant to the merit determination of LI's §2255 motion, which is a violation of principle of concise statement of facts required in a brief like this one, because the Government simply copied its statement of facts from the Brief of Appellee filed in the United States Appeals Court for the Third Circuit on Jan. 2, 2020. See Doc#47 at 10-45.

Furthermore, the Government's Statement of Facts is replete with voluminous false information without any support of court records, particularly those cited from PSR, which was copied from the Government's own previous self story-telling statement of facts in its motion. See Doc# 85 at 3 and Doc# 224 at 3-5. Here are some examples of the false information asserted by the Government in its Statement of Facts: (1) "preliminary investigation about Li revealed ... which continued untill the time of the initial indictment on July 20, 2016." Gov. Br. at 5. In fact, LI surrendered his DEA license and stopped prescribing controlled substances after the Government searched his office and two homes on Jan. 29, 2015 as Agent Hischer's testimony confirmed. Transcript (Tr) on May 3, 2018 at 78-79; (2) "Many professionals took action with respect to ... These professionals included various doctors, pharmacists, pharmacy chains who refused to fill LI's prescriptions ..." Gov. Br. at 4. In fact, there was only one doctor (Dr. Patel) who called LI to confirm one

Patient (L. Dwyer)'s medication, and some pharmacists and pharmacy chains stopped filling or selectively filled LI's prescriptions only after they became aware that LI was under PA state's investigation; LI Br. at 18-20; (3) "LI preferred cash payments." Gov. Br. at 6. In fact, none of the witnesses testified such; (4) "Dr. Thomas explained that ... it cannot medically legitimate for a doctor to provide patients with prescription renewals for opioid medications on their first office visit ..." Id at 16. In fact, Dr. Thomas NEVER testified such; (5) "Dr. Thomas testified that ... (7) Li engaged in sexual activity and other sexually inappropriate conduct with patients..." Id at 18. In fact, Dr. Thomas NEVER testified such; (6) "... being told by two of his office staff that Rachael was pregnant, one warning occurring a month prior to the final visit ..." Id at 20. In fact, the Court record showed Rachael Scarpa "pregnancy incident" occurred at her final visit (May 1, 2014) and nobody testified that one warning was given a month prior to the final visit", and so on.

In a word, when all records, files and documents et al are carefully scrutinized instead of relying on the Government's Statement of Facts, the following points are clear:

(a) the Government created LI's case, because (1) LI's case was initiated by his former disgruntled employee, Samantha Olivier (Scicutella) (she then became Agent Hischar's Confidential Source (CS#1)) about LI's so-called "excessive" prescribing of controlled substances to his patients with chronic pain, was thoroughly investigated by the PA office of Attorney General, Pike County District Attorney's office and Department of State Bureau of Licensing, and was concluded "the PA State Department Bureau of Licensing did not believe they had enough information to take administrative action against LI's medical license at this time" as documented in paragraph 7 of Agent Hischar's affidavit, LI Appx at E5.

before Agent Hischar initiated his investigation on March 5, 2013; and (2) Agent Hischar's search warrant lacked of probable cause, LI Br. at 13-64, of which he had knowledge.

(b) the Government tried hard to incriminate LI and maliciously prosecuted LI, because the Government's expert, Dr. Thomas' testimony (key evidence for LI's conviction) was baseless and contradicted himself, at most proving malpractice case, NOT criminal case. LI Br. at 71-77.

(c) LI was wrongfully convicted, because LI was completely deprived of effective assistance of counsel guaranteed by Sixth Amendment. LI Br. at 65-87.

(d) LI was illegally incarcerated, because LI's constitutional rights (Fourth and Sixth Amendment rights) were infringed by the Government. LI Br. at 13-88.

POINT TWO: The Government did not dispute LI's factual allegations in Ground One and its mere recitation of the same information in Agent Hischar's affidavit does not support probable cause.

The Government did not or could not dispute any of LI's factual allegations in Ground One of his §2255 motion, but continued to merely recite the same information in Agent Hischar's affidavit to argue for probable cause, Gov. Br. at 38-42, despite its knowing the fact that Agent Hischar's affidavit contains 74 false information, 3 intentional material omissions, 8 reckless disregards for the truth, 97 stolen protected health information, and numerous HIPAA-violated information. Consequently, the Government failed to offer any factual evidence which supports the existence of probable cause in Agent Hischar's affidavit as discussed below.

First, the Government failed to point out which information it recited in its brief

was legally obtained by DEA agents and was reliable as well, because "illegally obtained information cannot serve as the basis for probable cause", United States v. St. Rose, 189 F. Supp. 3d 528 (Dist. Ct. of V.I., 2016), and unreliable information cannot be substantial basis for determining probable cause, Franks v. Delaware, 438 U.S. 154, 165 (1978).

Second, all information the Government recited in it brief is not factual evidence, but conclusive statements, which can not be substantial basis for probable cause, because "a mere conclusory [sic] statement [gives] the magistrate virtually no basis at all for making a judgment regarding probable cause." Illinois v. Gates, 462 U.S. 213, 219 (1983).

Third, the Government fabricated the following information as if they were originally included in Agent Hischar's affidavit, but in fact they were not: (1) "and the reasons for the rejections", Gov. Br. at 38; (2) "the Pennsylvania Code of Professional and Vocational Standards", Id.; (3) "Data from the individual state data bases is routinely admitted as evidence in federal court where an individual is charged with prescribing or dispensing controlled substances outside the usual course of professional practice", Id. at 39; (4) "the affidavit contains information that raised multiple red flags for investigators ...", Id. at 40; (5) "Li preferred cash payments", Id.; (6) "patient interviews indicating that ...", Id.; (7) "Sometimes with early refills ...", Id. at 41; (8) "who all seemingly suffered with the identical diagnosis", Id.; (9) "Interviews from individuals who actually witnessed drug activity in and around Li's practice", Id.; and (10) "'doctor shopping' conveyed from other physicians to Li", Id., and so forth.

The point that the Government fabricated above described information which was NOT in Agent Hischar's affidavit is important, because the reviewing court confines

its review "to the facts that were before the magistrate judge, i.e. the affidavit, and [does] not consider information from other portions of the record." United State v. Miknevich, 638 F.3d 178, 181 (3d Cir. 2011).

Fourth, the Government did not point out which information LI contended in his Memorandum of Law was not false, because false information must be set to one side when probable cause is determined. Franks v. Delaware, 438 U.S. 154, 156 (1978).

Finally, the Government failed to identify which specific factual evidence in Agent Hischar's affidavit indicated a crime was committed by LI. The Government in its brief stated "(t)he probable cause determination is two fold: first, a judge must determine the 'historical facts', that is, the events leading up to the search; second, a judge must decide whether these historical facts, viewed from the standpoints of a reasonable police officer, amount to probable cause." Gov. Br. at 36.

In the case at bar, the Government failed to determine which information in Agent Hischar's affidavit is a "historical fact", but not false information, not unreliable information, not illegally obtained information, not conclusive information, and not added information "from other portions of the record". Further, the event leading up to the search was allegedly LI's "Knowingly distributing a controlled substance without a legitimate medical purpose, in a violation of 21 U.S.C §841(a)(1)" based on Agent Hischar's search warrant application. LI Appx at E1. However, the Government in its brief didn't dispute LI's following contentions: (1) no single factual information-"historical fact" in Agent Hischar's affidavit supports that LI "knowingly distributing a controlled substance without a legitimate medical purpose"; (2) Dr. Thomas, a pain management specialist contracted by the Government, didn't conclude that LI "knowingly distributing a

Controlled Substance without a legitimate medical purpose" — "historical fact", after he read and reviewed Agent Hischar's affidavit along with the supporting documentation, as a whole, as the Government suggested "statements in an affidavit may not be read in isolation — the affidavit itself must be read as a whole." Gov. Br. at 36. (3) Agent Hischar knew that probable cause didn't exist in his affidavit — "historical fact", as he testified in the grand jury superseding indictment proceeding: "our justification for asking for a search warrant [is] to obtain those patient files", because "he [Dr. Thomas] couldn't make the final determination without looking at a patient file to see what the patient was being treated for." Tr on October 17, 2017 at 73-74, LI Appx at E363-E364. In addition, Agent Hischar didn't provide any evidence or grounds on which the magistrate judge might rely to determine whether the factual allegations in Agent Hischar's affidavit constitute "knowingly distributing a controlled Substance without a legitimate medical purpose" — "historical fact".

    Consequently, any "historical facts" in Agent Hischar's affidavit which did not indicate LI "knowingly distributing a controlled substance without a legitimate medical purpose", i.e. a crime, by using "a common-sense and nontechnical manner" as suggested by the Government (Gov. Br. at 36), from the standpoint of a reasonable police officer, would not amount to probable cause, because "probable cause which will justify the issuance of a search warrant is less than certainty or proof, but more than suspicion or possibility, because the test being whether the allegations of the supporting affidavit warrant a prudent and cautious man in believing that <u>the alleged offense has been committed</u>." United States ex. rel Campbell v. Rundle, 327 F.2d 153, 163 (3d Cir. 1964)(emphasis added).

## POINT THREE: The Government failed to explain why good faith exception to the exclusionary rule applied in the current case.

The Government, without supplying any evidence and explanation, conclusively stated "the Third Circuit has recognized four situations, <u>none of which are present here</u>, in which an officer's reliance on a warrant would not be reasonable and would not trigger the exception" (emphasis added). Gov. Br. at 37, but the Government in its brief failed to answer the following important and relevant issues at hand before the Government concluded "none of which are present here":

(1). Why was the officer's reliance on the search warrant reasonable when there were pervasively false information, stolen protected health information, HIPAA-violated patient information, and intentional material omissions in his affidavit with which the Government didn't dispute? See LI Br. at 13-65.

(2). Why was the search warrant affidavit not "so lacking in indicia of probable cause" when no single factual information supports LI's knowingly distributing a controlled substance without a legitimate medical purpose, i.e. a crime, which was concluded by the Government's own pain management expert? See LI Br. at 13-65.

(3). Why would the officer's reliance on a search warrant be reasonable when the officer himself knew and admitted under oath in front of the grand jury proceeding that probable cause did not exist which the Government did not dispute with? See LI Br. at 60-61.

The answer is actually quite simple: Had the Government had evidence to prove otherwise, it would have certainly presented the evidence to this Honorable Court for its argument already.

## POINT FOUR: The Government is wrong about the defense Counsel's Motion to Suppress (Doc#62).

The Government in its brief stated "Li's experienced and seasoned defense team had to know the lack of legitimacy in any motion claiming a lack of probable cause in the search warrant affidavit. Strategically, Li's trial team focused on and filed a myriad of more pertinent and worthy pretrial motions." Gov. Br. at 43.

This is false for two reasons. First, the trial counsel well recognized the lack of probable cause in Agent Hischar's affidavit when he filed Motion to Suppress (Doc#62) on Jan. 2, 2018, because he correctly asserted in his motion that "the Affidavit of Agent Hischar contains no factual representation as to an actual crime being committed..." See Doc# 62 at 5, LI Appx at E370. Yet the trial counsel simply failed to file a brief in support of Motion to Suppress (Doc#62), despite the fact that Counsel extended the filing due date twice (on Jan. 16, 2018 and Feb. 1, 2018); and second, there was no strategical decision for counsel to focus on more pertinent and worthy pretrial motions, because LI was not informed such decision and Counsel failed to prepare several other pretrial motions and briefs, too. As such failures, Counsel filed several unedited or almost unedited pretrial motions and briefs including Doc# 60, Doc#61, Doc#78, Doc#79, Doc#95 and Doc#113, which were prepared by LI himself who was a legal layman, had no training in legal pleading and had no access to necessary legal research.

## POINT FIVE: The Government missed the target about Counsel's failure to request exculpatory evidence

The Government in its brief stated "As to the issue regarding trial Counsel's failure

to request exculpatory evidence, in fact, trial counsel filed an extensive 33-page motion --- included a request for all Brady information." Gov. Br. at 44.

The Government missed the target. In LI's Memorandum of Law, LI argued clearly that Counsel failed to request or subpoena the exculpatory evidence from the <u>PA office of Attorney General</u>, <u>Pike County District Attorney's office</u> and <u>Department of State Bureau of Licensing</u>, LI Br. at 66-67, since the investigation about LI's "excessive" prescribing of controlled substances to his patients with chronic pain reported by LI's former disgruntled employee was conducted by these three agencies and was concluded without any criminal or civil actions (see Agent Hischar's affidavit at Paragraph 7, LI Appx at E5), <u>which has nothing to do with Brady material at the Government's hand</u>. It should be noted "failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation." United States v. Baynes, 622 F.2d 66.69 (3d Cir. 1980)

<u>POINT SIX</u>: <u>The Government missed the point about LI's allegations of Counsel's failures to file pretrial motions and briefs</u>

The Government stated "As to trial counsel's alleged failure to file pretrial motions and briefs, Li is again incorrect. Trial Counsels' pretrial motions included the following ---." Gov. Br. at 45.

The Government missed the point. As clearly alleged in LI's Memorandum of Law, LI did not just generally allege that Counsel failed to file pretrial motions and briefs. Instead, LI alleged the following specific and critical failures: (1) Counsel <u>failed to prepare</u> and submit a brief in support of Motion to Suppress (Doc#62). LI Br. at 67; (2) Counsel <u>failed to prepare</u> pretrial motions (Doc#60, Doc#61 and

Doc#95), pretrial reply briefs (Doc#78, Doc#79 and Doc#113) and a post trial motion (Doc#181). Consequently, counsel submitted or filed unedited or almost unedited these motions and briefs prepared by LI. LI Br. at 68-69; and (3) counsel failed to prepare and submit three briefs in opposition three motions in limine filed by the Government. LI Br. at 69. Obviously, the Government tried hard to "muddy the water", so that it would falsely claim that "Li is again incorrect".

### POINT SEVEN: The Government is incorrect about revisiting the Third Circuit ruling.

The Government stated in its brief "To the extent that Li argues factual reasons ... Li raised the same issues on direct appeal with the Third Circuit ... Li cannot now under the guise of alleging ineffective assistance of counsel, revisit the Third Circuit's ruling." Gov. Br. at 46.

The Government is incorrect. The two grounds for relief raised in LI's pro se §2255 motion have NEVER been litigated before either in the trial court or appellate court, which is clearly stated in LI's §2255 motion at P5, P6 and P10.

To be clear, LI was convicted by a jury trial and his conviction was affirmed by the Third Circuit, but that does not mean LI was in fact guilty when his effective assistance of counsel guaranteed by Sixth Amendment in a adversarial system was completely deprived as reflected in LI's §2255 motion. To be equally clear, even LI's contentions in his §2255 motion were litigated before, it does not forfeit his right to relitigate such egregious infringement of his constitutional rights by the Government as alleged in his §2255 motion and this reply brief, because

it is not about whether relitigation is necessary, but about whether one fair and adequate litigation has been afforded to a federal prisoner who was wrongfully convicted and was illegally incarcerated by the Government. Kaufman v. United States, 394 U.S. 217 (1969). It may be worthwhile to recite these lines opined by the United States Supreme Court: "The availability of federal post conviction collateral remedies is necessary to the integrity of proceedings at and before trial where constitutional rights are at stake." Id at 225.

Therefore, any claim that LI is revisiting the Third Circuit's ruling is plainly false and meritless.

### POINT EIGHT: The Government's Conclusive argument regarding LI's allegation about Counsel's erroneous concession of the relevance and fit prong of Daubert Criteria has no merit.

The Government stated in it brief "Li offers no legal or factual basis as to why such concession was legally deficient or strategically erroneous." Gov. Br. at 46.

The Government's above Conclusive argument without supplying any evidence has no merit. As LI contended in his Memorandum of Law, Dr. Thomas' testimony at Daubert hearing of May 1, 2018 showed that LI failed to follow the Model Guidelines when he prescribed opioid medications to his pain patients, which was a departure from generally accepted standard of medical practice, or a substandard of care, or a malpractice, but not a crime. He later even admitted in the case of Mr. Conklin that opioid prescription prescribed by LI might have had legitimate medical purpose, but it was substandard of care based on the very same criteria he used to form

his opinion in all other cases where he opined LI prescribed opioid medications to his patients without legitimate medical purpose. LI Br. at 71-72, 76-77. Therefore, it is clear that Dr. Thomas' testimony and opinion may be relevant to prosecuting a malpractice case, but they don't meet the relevance and fit prong of Daubert Criteria in prosecuting a criminal case, because, to convict LI, the Government must prove beyond reasonable doubt that LI's conduct was "something <u>more severe or greater than medical malpractice</u> which in turn means a departure from generally accepted standards of medical practice resulting in harm to a patient" as jury instruction-legal standard so stated. Tr on June 4, 2018 at 24 (emphasis added).

As such, the counsel's concession of relevance and fit prong of Daubert Criteria was erroneous.

<u>POINT NINE</u>: The Government's Conclusive Statement about Counsel's failures in direct examination and cross-examination is meritless

The Government stated "The remaining of Li's argument regarding trial counsels' failure to effectively engage in cross-examination of Government witness, or effectively conduct direct examination of his expert witness, are likewise without merit..." Gov. Br. at 47.

The Government's meritless argument is self evident. Besides its conclusive statement, the Government didn't offer any evidence to rebut LI's contentions about counsel's multiple blatant and outrageous failures in his cross-examination of the Government's several witnesses and direct examination of LI's expert and LI himself

asserted in LI's Memorandum of Law. LI Br. at 72-85. The Government's such a failure is obvious, because it could NOT rebut LI's overwhelmingly evidence-supported arguments as demonstrated in LI's Memorandum of Law, and LI doesn't believe that the assistant U.S. attorney did not know how to argue for her point. In other words, she did not have evidence to argue for her point.

<u>POINT TEN</u>: The Government's views of LI's allegations in his §2255 motion are unsupported and laughable.

The Government stated "Here, all of LI's claims are contradicted by the record and/or 'patently frivorous'". Gov. Br. at 52.

The Government's such views are plainly unsupportive and false. First, the Government did not specifically point out which claim is contradicted by the record and did not offer even one piece of evidence to contend LI's claims, and in some instances, the Government failed to even mention LI's claims such as actual conflict of interest claim (see point eleven) and prosecutorial misconduct claim (see point twelve), how could the Government conclude "all of Li's claims are contradicted by the record"? Second, take the lack of probable cause claim as an example, the Government did not point out which element in this claim is missing and how LI failed to state a cause of action based on well-settled case laws when taking all of LI's factual allegations as truth. As a result, the Government's statement "all of Li's claims … are 'patently frivorous'" is laughable.

The ABA Standard for Criminal Justice entitled "the Function of the Prosecutor" sets forth the following prosecution function in relevant part: "(b) The prosecutor is both an administrator of justice and an advocate." ABA Standard for Criminal

Justice, 3-1.1 (b). Here the Prosecutor is an administrator of justice first, and an advocate of the Government second. Further, the rule of professional conduct of Pennsylvania Code states that the prosecutor in a criminal case shall hold "Candor toward the tribunal". Rule of Professional Conduct of Pennsylvania Code, Rule 3.3.

Against these Professional Standarts, LI submits to this Honorable Court that the views of the assistant U.S. attorney about LI's allegations in his §2255 motion are beyond her rule of being a Government advocate (not to mention being an administrator of justice) in a criminal case and are misleading, to say least.

### POINT ELEVEN: The Government avoided addressing LI's ineffective assistance of counsel claim arising from actual conflict of interest.

LI raised actual conflict of interest claim, LI Br. at 85-87, but the Government chose not to address it at all. While LI doesn't believe the assistant U.S. attorney inadvertently neglected it, because this claim alone would warrant vindication of LI's jury verdict ("Actual conflict of interest adversely affecting lawyer's performance renders assistance ineffective." Strickland v. Washington, 466 U.S. 668, 686 (1984); "[P]rejudice is presumed when counsel is burdened by an actual conflict of interest." Id at 692), it does indicate the Government has admitted this allegation, because "an allegation... is admitted if... the allegation is not denied", F.R.C.P. Rule 8(b)(6), and "plaintiff does not deny the factual allegations... the Court also deems those paragraphs to be admitted." Shiffer v. Liberty Mut. Fire Ins. Co., 2019 U.S. Dist Lexis 121753, n3 (M.D. PA. 2019).

### POINT TWELVE: The Government avoided addressing prosecutorial misconduct by the assistant U.S. attorney.

LI raised prosecutorial misconduct by the assistant U.S. attorney in the grand jury superseding indictment proceeding on October 17, 2017, LI Br. at 64-65, but the Government did not even mention a single word about this claim, despite the fact that the Government in its brief stated "and answers the petitioner's Motion to Vacate, Set Aside, or Correct Sentence." Gov. Br. at 1. Because the Government submitted that LI's allegations are "contradicted conclusively by the record" and "patently frivorous", Gov. Br. at 52, it is necessary to take a little extra time to present more detailed information about the prosecutorial misconduct as an example of LI's allegations being non-frivorous and not contradicted by the record before this Honorable Court summarily denies LI's §2255 motion, which LI doubts about.

The rule of professional conduct of Pennsylvania code states in relevant part: "The prosecutor in a criminal case shall (a) refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause." Rule of Professional Conduct of Pennsylvania Code, Rule 3.8(a).

The American Bar Association (ABA) model code of professional responsibility states in relevant part: "(A)- A public prosecutor or other government lawyer shall not institute or cause to be instituted criminal charges when he knows or it is obvious that the charges are not supported by probable cause." ABA Model Code of Professional Responsibility, DR 7-103(A).

The ABA standard for criminal justice entitled "The Function of the Prosecutor" sets forth the following prosecution function in relevant part: "(c) The duty of the prosecutor is to seek justice, not merely to convict." ABA Standard for Criminal

Justice, 3-1.1(c).

In the case at bar, while the Government was seeking the superseding indictment against LI in front of the grand jury on October 17, 2017, the assistant U.S. attorney was unequivocally informed by DEA Agent Hischar that probable cause did not exist in his search warrant affidavit, because his justification for asking for a search warrant was that the Government's pain management expert needed patient files to determine "what the patient was being treated for." Tr on October 17, 2017 at 73-74. LI Appx at E363-E364. Therefore, the assistant U.S. attorney knew that the evidence she was then using to secure the superseding indictment against LI was unconstitutionally searched and seized, and there was no probable cause to indict LI. But she did not pause to find out what was transpired, and she carried on the superseding indictment against LI. Tr on October 17, 2017 at 75-191. Indeed, the grand jury returned a 32-count superseding indictment against LI based upon the unconstitutionally seized evidence, despite the fact that the assistant U.S. attorney knew that the evidence she was then using to secure the indictment against LI was illegally obtained. Nonetheless, she did not explain to the grand jury that the evidence was illegally obtained so that the grand jury could make its independent decision of whether it would indict LI. This was a clear and plain violation of the duty of the prosecutor "to seek justice, not merely to convict" and "not [to] institute or cause to be instituted criminal charges when (s)he knows or it is obvious that the charges are not supported by probable cause." Such kind of egregious prosecutorial misconduct carried out by the assistant U.S. attorney must be condemned and sanctioned by the Honorable Court.

The United States Supreme Court held "the District Court had no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such misconduct." Bank of Nova Scotia v. United States, 487 U.S. 250, 263 (1988). "The prejudicial inquiry must focus on whether any violations had an effect on the grand jury's decision to indict. If violations did substantially influence this decision, or if there is grave doubt that the decision to indict was free from such substantial influence, the violations cannot be harmless." Id.

In the case at bar, the sole or primary evidence the assistant U.S. attorney presented to indict LI was unconstitutionally seized from LI's medical office, a house at 146 Rising Meadow Way, East Stroudsburg, PA, a house at 4005 Milford Landing Drive, Milford, PA and several bank accounts from two banks (PNC bank and Wells Fargo) as demonstrated by the grand jury indictment proceeding. Tr on October 17, 2017 at 1-191. Had the assistant U.S. attorney honestly informed the grand jury for its independent determination that the sole or primary evidence she was then presenting to indict LI was illegally obtained by violating LI's constitutional right, there was "grave doubt" that the decision to indict LI would have still been made by the grand jury. Consequently, dismissal of LI's superseding indictment on October 17, 2017 is warranted.

CONCLUSION: For the foregoing reasons, Movant LI respectfully requests the Honorable Court grant his §2255 motion, or grant evidential hearing if justice so demands.

Respectfully Submitted,

Date: June 3, 2021

Fuhai Li, Pro Se

# CERTIFICATE OF SERVICE

I, Fuhai Li, hereby certify that on the date below, a true and correct copy of the foregoing "Reply Brief to the Government's Memorandum Of Law in Opposition to Movant's 28 U.S.C. § 2255 Motion" was served upon the following party via the United States first class mail through Federal Correctional Institution's mailing system with outgoing special mail receipt:

Michelle Olshefski, Esq.
Assistant U.S. Attorney
US Attorney's Office
P.O. Box 309
235 N. Washington Ave.
Scranton, PA 18501

By: _____

Fuhai Li, pro se
Reg# 75356-067
FCI McKean

Date: June 3, 2021

Fuhai Li
Reg# 75356-067
Federal Correctional Institution Mckean
P.O. Box 8000
Bradford, PA 16701

◇ 75356-067 ◇
Clerk Of Courthouse
PO BOX 1148
Scranton, PA 18501-1148
United States

U.S. District Court for the Middle District of Pennsylvania

RECEIVED
SCRANTON
JUN 10 2021
PER_____ DEPUTY CLERK